NIUKKANEN, ALIAS MACKIE, v. McALEXANDER, ACTING DISTRICT DIRECTOR, IMMIGRA- TION AND NATURALIZATION SERVICE.

No. 130. Argued March 21, 1960.—Decided April 18, 1960.

*Joseph Forer* and *Nels Peterson* argued the cause for petitioner. With *Mr. Peterson* on the brief was *Reuben Lenske.*

*Oscar H. Davis* argued the cause for respondent. On the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey, Beatrice Rosenberg* and *Julia Cooper.*

*Blanch Freedman* filed a brief for the American Committee for Protection of Foreign Born, as *amicus curiae,* urging reversal.

PER CURIAM.

The petitioner sought relief from an order directing his deportation on the ground that as an alien he had become, after entering the United States, a member of the Communist Party within the meaning of the Act of October 16, 1918, as amended by § 22 of the Internal Security Act of 1950, 64 Stat. 987, 1006. The District Court, after hearing, denied the petition, 148 F. Supp. 106, and the

Court of Appeals affirmed. 241 F. 2d 938. Invoking *Rowoldt* v. *Perfetto,* 355 U. S. 115, decided after the order for his deportation, petitioner sought an administrative reconsideration of his status. Upon its denial by the Board of Immigration Appeals he began the judicial proceeding immediately before us for review. After a hearing, the District Court again denied his petition for relief and the Court of Appeals affirmed the order of the District Court. 265 F. 2d 825. The ultimate question is whether petitioner is subject to deportation under *Galvan* v. *Press,* 347 U. S. 522, or is saved from it under *Rowoldt* v. *Perfetto, supra.* The determination of this issue turns on evaluation of the testimony before the District Court, in light of *Galvan* v. *Press, supra,* and *Rowoldt* v. *Perfetto, supra.* Such assessment largely depends on the credibility of the testimony on which the district judge based his judgment, particularly that of the petitioner himself, whom the judge saw and heard. An able judge found that petitioner in denying membership in the Communist Party, unlike Rowoldt who admitted membership, see 355 U. S., at 116–117, but accounted for its innocence, "perjured himself before, and I believe that he perjured himself today." We cannot say that his findings, affirmed by the Court of Appeals, were clearly erroneous and do not support the conclusion of both the lower courts.

*Judgment affirmed.*

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACK, and MR. JUSTICE BRENNAN concur, dissenting.

Petitioner was born in Finland in 1908, came here when he was less than a year old and has resided here ever since. He is married to a native-born citizen; he served honorably in our Army; and he has no criminal record of any kind except for a petty offense, back in 1930.

The evidence against petitioner was given by two witnesses who had once been Communists, one of whom petitioner swore he never knew. They testified that petitioner was a member of the Communist Party from 1937 to 1939 in Portland, Oregon. One of them testified that petitioner had assisted in the circulation of a paper, Labor New Dealer, which apparently was an organ of the Party. There was evidence he paid dues to the Party of 25 cents a month and that he attended both open and closed meetings of the Party. But even these two ex-Communists who appeared against petitioner said that there was no discussion of ways and means to overthrow the Government at those meetings, that only problems such as labor conditions, relief, and the like were discussed. One also swore that petitioner never advocated the overthrow of the Government. Petitioner's interest in the Party, according to one of these hostile witnesses, was as a result of "the sufferings of the people in the depression"; and he was "very sympathetic toward their welfare." This witness agreed that petitioner was not an intellectual interested in "theory" or "political discussion." His interests were "in bread and butter topics of the day, what to do for unemployment and relief." Nor had petitioner ever taught the Communist doctrine nor distributed its literature, except for the Labor New Dealer.

These two ex-Communists testified that petitioner attended dances that the Party arranged in Portland. But they said he never held an office in the Party; nor was ever employed by the Party; nor was ever a "functionary" in the sense of representing the Party. He attended a regional meeting at Aberdeen, Washington, where various speakers, according to one ex-Communist, gave "glowing accounts" of their work for the Party, "more or less fabricating" their achievements.

We know from petitioner's lips that he was not acquainted with the conventional Communist literature;

and nothing came from the lips of his accusers that denied it. One who reads the whole of this record cannot put it down without feeling that here is a man neither conspiratorial, dangerous, cunning, nor knowledgeable. Petitioner—a painter by trade—represents a microscopic element in the ranks of our labor force who was caught up in a movement whose ideology he did not understand and whose leaders spoke in terms of bread for the hungry, and jobs for the unemployed. He has recently earned about $4,000 a year; he bought a home for $3,100 (which is now worth from $6,000 to $6,500 subject to a $2,500 mortgage); and he has personal property, including a car, worth $2,000.

This is the background against which the following testimony can be best understood.

"Q. In the Finnish Hall or anywhere else did you attend Communist Party meetings?

"A. Well, if I said yes and if I said no maybe I wouldn't be telling the truth, because I really couldn't tell one way or the other. I went to meetings there. Sometimes maybe they were Communist, and maybe they wasn't. It could have been and maybe they wasn't.

. . . . .

"Q. Have you been a member of the Communist Party of the United States or any branch or affiliate or organization by that name or any similar name?

"A. Knowingly, I haven't, no.

. . . . .

"Q. Do you believe that membership in the Communist Party now is a lawful political purpose?

"A. No. I can't answer questions about that because I don't know. If Congress says it is unlawful, it is unlawful. If it isn't, it isn't. I don't know. If I got the question right, I don't know.

"Q. I am not trying to confuse you, . . . I am trying to find out your feelings toward Communism.

"A. Naturally I don't—Communism or socialism, I don't care what party it is here or any place else, if it has anything to do with overthrowing the government by force and violence I don't agree with it, no.

.      .      .      .      .

"Q. What was your impression of what the Communist Party was trying to do?

"A. Well, the only thing I heard in those days was more relief and more work, and I never heard anything else; no violent overthrow of the Government, or anything of that sort, but anyplace I went to meetings was always more work and more food.

"Q. As far as you know, that was what the Communist Party stood for during that period?

"A. I don't know if they stood for that, but I never heard anything against it."

The case is on all fours with *Rowoldt* v. *Perfetto,* 355 U. S. 115. The "solidity of proof" (*id.,* at 120) required for the severe consequences of the deportation of a man who came here when he was less than one year old, whose only memory of life is in this land, and who has lived here over 50 years has not been met. The "meaningful association" with the Party which the *Rowoldt* case requires (*id.,* at 120) simply has not been established here. In this case, as in *Rowoldt,* petitioner's association with the Party was "wholly devoid of any 'political' implications." *Id.,* at 120.

The testimony of the two ex-Communists upon which petitioner is being banished has never been heard by a court. The only testimony taken by the District Court was that of the petitioner and his character witnesses. The district judge believed the witnesses against Niuk-

kanen by virtue of having read the same record that is now before this Court. ` His impression of their credibility can be no more reliable than our own. Certainly then his conclusion that petitioner "perjured himself before, and . . . perjured himself today" does not preclude this Court's review of the evidence against him. Apart from that, the evidence would be far too meagre to establish the "meaningful association" which we required in the *Rowoldt* case.

The unanimity of all the finders of fact in the *Rowoldt* case (*id.*, at 119) that Rowoldt was a "member" of the Party and his refusal to answer when asked in the deportation proceedings whether he had ever been a member of the Communist Party, did not stop us from declaring that "the record before us is all too insubstantial to support the order of deportation." *Id.*, at 121. The unanimity of the finders of fact in the present case should likewise be no barrier to our entry of a just decree. A man who has lived here for every meaningful month of his entire life should not be sent into exile for acts which this record reveals were utterly devoid of any sinister implication.