MATTER OF C——

In DEPORTATION Proceedings

A-3873207

*Decided by Board June 23, 1960*

Evidence—*Jencks* rule—Responsibility for determining existence of pre-hearing statements—Recall of Government witnesses for cross-examination on basis of pre-hearing statements—Alien's rights controlled by Jencks statute.

(1) Special inquiry officer was not required to make independent determination of whether additional *Jencks* statements were available where examining officer's declaration that the two pre-hearing statements supplied respondent were the only ones in existence was supported by the record.

(2) Special inquiry officer's refusal to recall Government witnesses for cross-examination on basis of pre-hearing statements made available for first time at reopened hearing was not prejudicial error where witnesses had previously testified in great detail on very matters contained in pre-hearing statements and full and adequate cross-examination on such matters had been allowed.

(3) Respondent is not entitled to greater rights under *Jencks* rule than he has under *Jencks* statute (18 U.S.C. 3500).

CHARGE:

Warrant: Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—After entry, member of Communist Party of United States.

BEFORE THE BOARD

**Discussion:** This is an appeal from the order of the special inquiry officer requiring respondent's deportation on the charge stated above. The appeal will be dismissed.

Respondent, a 56-year-old male, a native and national of Russia, has been a resident of the United States since 1921. In 1954, he was ordered deported on the ground that after his entry he had been a voluntary member of the Communist Party (about 1925 to 1937). Judicial review resulted in a remand of the case to the administrative authorities so that it could be considered under *Rowoldt* v. *Perfetto*, 355 U.S. 115 (1957). Reopened hearing was held on February 10, 1959. No evidence was submitted by either the Service or respondent. The special inquiry officer reviewed the evidence of record and concluded that respondent had been a voluntary member of the Communist Party and that the membership had been

696

"meaningful" under the rule laid down in *Rowoldt*. Appeal to this Board resulted in a reopening of proceedings so that respondent could have access to pertinent statements of Government witnesses, and so that further evidence could be furnished on the issue of the meaningfulness of membership if it was desired.

Hearings were then held on November 24, 1959, and on January 6, 1960. The Service made available under 18 U.S.C. 3500(a) a statement made by Government witness M—— on May 27, 1952, and one made by Government witness P—— on April 22, 1953. No other evidence was offered by either the Service or respondent. Respondent refused to testify either when called by the Government as a witness or to present his own defense. (He did make an informal statement not under oath stating that he had brought no harm to this country and that the university he managed sought to satisfy cultural needs.) The special inquiry officer reviewed the evidence of record and held that respondent had been a voluntary and meaningful member of the Communist Party. Deportation was ordered. The appeal from this order is now before us.

Evidence as to respondent's membership in the Communist Party and the meaningfulness of the association comes from Government witnesses P—— and M——, admissions and declarations made by respondent, and documents concerning the Jewish Workers University (later the Jewish Educational Institute) with which respondent was associated.

Witness P—— testified that he had been a member of the Communist Party (or an affiliate) from 1928 to 1937; that he was outside the United States from 1931 to 1932; that he held various offices in the Communist Party; that he first became acquainted with respondent in 1929; that in 1929, 1930, and 1933, he and respondent attended four or five meetings of Communist Party leaders; that the subject of the meetings was the carrying out of Communist Party directives and that he last saw respondent between 1933 and 1935 at Communist Party headquarters.

Government witness M—— testified that he had been a member of the Communist Party from 1919 to 1937; he listed several positions he had with the Party during the period. He testified that he first saw respondent in about 1924, that he saw him a few hundred times thereafter, and that he attended about 40 to 50 closed meetings of the Communist Party where respondent was present. The last time the witness saw respondent at a closed Communist Party meeting was in 1936. The witness stated that from 1925 to 1928 it had been his duty to make sure that persons coming to closed meetings of the Communist Party were members in good standing, that in performance of his duties he had checked respondent's Communist Party membership book during this period and

697

that at other closed meetings at which he had seen respondent present and where he himself did not make a check, a Communist Party official performed this duty. The witness testified that respondent had written for the *Morning Freheit*, a Jewish language publication of the Communist Party.

Respondent's association with the Jewish Workers University is established by admissions made at the hearing and elsewhere. The period of the association covered by this record runs from about 1926 to 1947.

The school is characterized as a part of the Communist Party by a Communist Party publication and by two Government witnesses. One of the witnesses testified that he had been present at the convention of the Communist Party which ordained the birth of the school, and that the school had been formed to train Communist Party leaders and teachers. He stated that appointment to the job held by respondent was made by a branch of the Communist Party and that it was respondent's duty to see that the Communist Party program and dogma were carried out in the school.

An information pamphlet concerning the program of the school in 1933 and 1934 (respondent is listed as an official) reveals that it existed for the "revolutionary fighter against the present capitalist system"; that it is a "Marxist-Leninist school"; that it will train the student with the Marxist-Leninist "weapon in the struggle against the capitalist system"; and that the courses furnished included a study of Marxism-Leninism, Dialectical Materialism, History of the Three Internationals, History of the Russian Revolution, and Principles of Communism.

Respondent's writings about the school reveal complete approval of its non-partisan education aimed at helping the working class secure its final liberation (Exh. 10, Letter from respondent while a student at the school, 1926). An article written in 1947 by respondent for the *Morning Freheit*, a Communist Party daily, speaks approvingly of a student who filled every day of her "wonderful life with deeds for every worker and popular organization." The organizations to which this student felt obligations were "the Branch, the school [Jewish Institute], the Party, the 'Morning Freheit' and the 'Daily Worker'." (Exh. 11)

The Communist Party itself characterizing certain individuals and institutions which had sent greetings to the Daily Worker in 1930 called them sympathizers with the aims and policies of the Communist Party and its central organ the Daily Worker; this same comment reveals the policy in question is the overthrow of the exploiting class and their government for the establishment of true proletarian dictatorship. The school of which the respondent was an official sent a greeting over his name (Exh. 15).

698

Documents submitted by respondent concerning the school from 1941 to 1943 (Exhs. 23–27) reveal an interest in Yiddish cultural matters.

We believe that this record establishes by evidence that is reasonable, substantial and probative that respondent was a voluntary member of the Communist Party. M—— knew respondent personally over a long period of time; he was present at meetings of the Communist Party closed to all but members of the Communist Party; he himself had checked respondent's Communist Party book before admitting him to some of the meetings. This testimony is not contradicted by anything in the record. On the contrary, it is corroborated by testimony of Government witness P—— and the ample evidence of record which establishes respondent's belief in an active role in bringing about the final liberation of the working class. The testimony finds corroboration in respondent's leadership over long periods of time in a school founded by the Communist Party to train Communist Party leaders, and his position as a writer for a Communist Party newspaper. His actions are not such as would be inconsistent with the existence of Communist Party membership, but, on the contrary, are the actions of one who could well have been a member of the Communist Party. It is not improper to consider such circumstantial evidence.

We believe that membership was meaningful. Respondent's experience and work was such that he must have known that the organization he had joined was the political organization known as the Communist Party. His failure to explain the membership, its existence over a long period of time, respondent's participation in a position of leadership and responsibility in a program of training future leaders of the Communist Party, and respondent's employment writing for a Communist Party newspaper must negative any assertion that the membership was not meaningful. Respondent's case differs from that of *Rowoldt, supra,* where membership was explained as being for the purpose of obtaining food and lodging in a period of emergency. In the instant case, there is no explanation of the membership and there is no evidence that it was primarily to obtain food and lodging in a period of emergency. *Niukkanen* v. *McAlexander,* 265 F.2d 825, which counsel referred to in oral argument, was then pending before the Supreme Court. It was decided on April 18, 1960 (362 U.S. 390). A careful study of the case reveals no reason why respondent's membership should not make him deportable. Finally, on the issue of the meaningfulness of membership, we believe it is proper to consider the record as it existed, without amplification, to determine if it met the requirements of *Rowoldt* (see *Ng Yip Yee* v. *Barber,* 267 F.2d 206, C.A. 9, 1959).

Counsel charges that Government witness P—— has now been discredited and for this reason is no longer being used by the Service. He asked the examining officer and the special inquiry officer, and now asks this Board, to determine if it is true that P—— is a discredited witness. The examining officer stated he had no knowledge that P—— was a discredited witness. The special inquiry officer refused to go outside the record. We ourselves see no reason to make an inquiry on this score which is a matter for counsel to establish, and is a proper subject for investigation by counsel. Counsel contends that M—— is discredited because the court in *United States* v. *Kusnitz*, U.S.D.C., S.D. Calif., Civ. No. 15, 446, August 27, 1956, refused to accept his testimony. We think it too well established to require citation that the credibility of a witness must be left in large part to the hearer of the testimony. The testimony of neither M—— nor P—— has been contradicted; their testimony is not improbable but, on the contrary, is quite consistent with the existence of activities in which respondent probably could not have engaged had he not been a member of the Communist Party. We see no reason to reject the testimony of the witnesses.

At the last reopened hearing, the Government made available under 18 U.S.C. 3500(a) a statement made on May 27, 1952, by M—— (Exh. 28) and one made by P—— to a Service officer on April 22, 1953 (Exh. 29). Counsel is of the belief that other statements exist to which he is entitled and that it was the special inquiry officer's duty to determine the existence of the statements. The special inquiry officer ruled that the record and the declaration of the examining officer revealed that there existed only the two statements made available and that no further inquiry on the issue was needed. We believe the special inquiry officer ruled properly in this matter. We note that P—— testified he had made a statement to a Service officer in April 1953 concerning respondent and that he denied making others. We note that M—— thought that in 1952 he may have made one statement about respondent to an official of the Service and his testimony does not reveal that he made more than one statement. The examining officer declared for the record that the two statements supplied were complete and that inquiry had revealed no other statements. This information is strongly supported by the record, and together with the record was a proper basis on which the special inquiry officer could rule (*Badon* v. *United States*, 269 F.2d 75 (C.A. 5, 1959), certiorari denied 361 U.S. 894).

M—— did testify that from 1939 to 1953 he had reported some harassing incidents to the Federal Bureau of Investigation and some to the Service and that he had appeared to give expert testimony concerning an organization, but had not acted as an identify-

ing witness at that time. The special inquiry officer ruled that respondent was not entitled to either the statements made concerning the harassment or the one made concerning an organization if such statements existed, and that it was not necessary to make any further inquiry as to the existence of the statements. We see no error here.

Counsel contends that he was entitled to cross-examine P—— and M—— on the basis of the statements which were supplied at the reopened hearing. The special inquiry officer ruled that the witnesses testified in great detail on the very matters contained in the statements and that there had been full and adequate cross-examination on these matters. We find the ruling proper. Where a party is entitled to statements, the fact that he did not receive the statements at the proper time will neither be prejudicial error nor give an absolute right of cross-examination, if it can be shown that the failure to make the statements available at the proper time or to permit cross-examination actually worked no prejudice (*Rosenberg* v. *United States*, 360 U.S. 367). Counsel attempts to distinguish *Rosenberg* from the case before us on the ground that the statement involved there did not say anything about the testimony given on the stand but merely related to an ability to recall the facts of the case which had already been admitted on cross-examination. We cannot accept this distinction; *Rosenberg* applies to any matter which could be used for the purpose of impeachment. *Bergman* v. *United States*, 253 F.2d 933 (C.A. 6, 1958), and *United States* v. *Prince*, 264 F.2d 850 (C.A. 3, 1959), cited by counsel, were decided before *Rosenberg*. Counsel is of the belief that he has greater rights under the *Jencks* rule than under the Jencks Act. *Rosenberg, supra*, and *Palermo* v. *United States*, 360 U.S. 343, require dismissal of the contention.

Upon complete review of the record and contentions of counsel we believe deportation was properly ordered.

**Order:** It is ordered that the appeal be and the same is hereby dismissed.

O