William **THOMAS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19656.

United States Court of Appeals
Ninth Circuit.

March 9, 1965.

Richard M. Buxbaum, Berkeley, Cal., for appellant.

Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, for appellee.

Before HAMLEY and MERRILL, Circuit Judges and THOMPSON, District Judge.

HAMLEY, Circuit Judge:

Since July 9, 1962, William Thomas has been serving a five-year sentence in a federal prison for interstate transportation of a falsely made, forged and counterfeit security, in violation of 18 U.S.C. § 2314 (1958, Supp. III). This court, on March 4, 1964, dismissed an appeal from the judgment of conviction because no notice of appeal from the conviction had been filed. On May 28, 1964, he instituted in the district court this proceeding under 28 U.S.C. § 2255 (1958) to vacate and set aside the judgment of conviction and sentence. The district court, after hearing, denied the motion and Thomas appeals.

In his application in this proceeding Thomas alleges that he is entitled to relief on the basis of errors which normally can be presented only on a direct review, because of the two following circumstances: (1) his appointed counsel failed to file a notice of appeal from the conviction and sentence despite Thomas' timely request that an appeal be taken; and (2) there was plain reversible error in the respects described in the application.

The district court appeared to accept Thomas' argument that, in view of Dodd v. United States, 9 Cir., 321 F.2d 240, 243–246, if Thomas can sustain both of these allegations he is entitled to relief under section 2255, notwithstanding the facts that the errors relied upon were of a kind which may be ordinarily raised only on a direct appeal from the conviction. But the district court held that Thomas did not establish either of these elements.

We turn immediately to the question of whether, in any of the respects claimed, there was plain reversible error in connection with the trial and conviction. One of the asserted errors involves the reception of evidence concerning the prior theft of the check in question and the other articles, the reception and later exclusion of evidence that Thomas had sold two guns which were among the other articles stolen with the check, the prosecution's knowledge of, but failure to produce, evidence tending to show that a person other than Thomas had stolen all of these items, the denial of a motion for a mistrial because such evidence had come before the jury, and the adequacy of instructions given, after exclusion of the evidence concerning Thomas' sale of the guns, to overcome the asserted prejudice.

Thomas was charged with having, on or about December 30, 1962, unlawfully, willfully, knowingly and feloniously, and with unlawful and fraudulent intent, transported and caused to be transported in interstate commerce, from Pocatello, Idaho, to Chicago, Illinois, a falsely made, forged and counterfeit traveler's check in the amount of fifty dollars, payable on the First National Bank of Chicago, Illinois. According to the indictment, the check was, as Thomas well knew, false, forged and counterfeit in that the purported counter-signature of D. W. Brewer appearing upon the check was false, forged and counterfeit.

D. W. Brewer testified, without objection by Thomas, that the check in question, another check, and other items in-

cluding two guns, having a value of five thousand dollars were stolen from his locked car between the towns of Little America and Kemmerer, Wyoming on December 29, 1961.

Charles Brewer, unrelated to D. W. Brewer, testified that on the evening of the next day he and his acquaintance, appellant Thomas, drove in Charles Brewer's car to the Christensen Service Station in Pocatello, Idaho, to buy some gasoline, Thomas doing the driving. Charles Brewer testified that the station attendant was Marvin Christensen. He further stated that he did not pay for the gasoline, but the charge could have been placed on his bill. This witness testified that Thomas got out of the car and went inside the station, then returned to the car. According to Charles Brewer, just before the two left the station, Marvin Christensen asked him if Thomas was his brother, and Charles Brewer told him he was not.

Marvin Christensen's testimony corroborated the testimony of Charles Brewer to the effect that the latter and Thomas, whom he identified in the court room, had driven to the station on the evening of December 30, 1961, and had purchased gasoline. He testified that Thomas went inside the station, and it was his recollection that Charles Brewer, with whom the witness was well acquainted, also went inside the station. Christensen stated that Thomas then took what appeared to be the check in question out of a book and asked the witness for a pen.

Christensen further testified that Thomas appeared to write something on the check, but he did not actually see Thomas sign it. According to this witness Thomas then handed the check to Christensen and the latter cashed it,

taking out the price of the gasoline and giving Thomas the change. Christensen stated that he later noted that the check was not dated, and called Thomas back into the station to add the date.

There was testimony that, in the normal course of business, this check was banked at the First Security Bank, in Pocatello, from which it was forwarded to the paying bank in Chicago. D. W. Brewer testified that he did not recognize, as his signature, his name, written at the top of the check, when displayed to him in court.

The prosecution produced testimony from one Gerald MacPherson to the effect that, in January, 1962, he purchased from Thomas two of the guns which had been stolen from Donald Brewer's car. Counsel for Thomas interposed objections to this line of questioning on the ground that such evidence is not material, but the objections were overruled. The two guns were then offered in evidence. Counsel for Thomas objected to reception of this physical evidence on the ground that it was " * * * incompetent, irrelevant, and doesn't prove any of the issues in the case." The trial court, without calling upon the prosecution to state the purpose for which this evidence was offered, overruled the objection.

At the close of the Government's case, counsel for Thomas moved to strike the gun exhibits on the ground that there was nothing to connect Thomas with the original misappropriation of the weapons. As a further ground, counsel for Thomas told the court that the Government was in possession of facts which made it obvious that the original misappropriation of the weapons was by a person other than Thomas. A colloquy then occurred which, in material part, is quoted in the margin.[1]

---

1. "THE COURT: Does the Government, or do you have information in regard to the guns; where they came from, other than what is here? MR. CHRISTENSEN [Jim Christensen, Assistant United States Attorney]: As to where they came from? THE COURT: Who took them from the automobile. MR. CHRIS-

TENSEN: We have no information as to that. THE COURT: Where does Mr. Gee get the knowledge that the guns were taken from someone other than this man? MR. CHRISTENSEN: Perhaps the statement of Mr. Liday in the Idaho State Penitentiary. I will have to check it. MR. GEE: That is what I

On the basis of this colloquy, which was outside the presence of the jury, the trial court excluded the guns as exhibits. The court also granted the motion then made to strike the testimony of MacPherson and instruct the jury to disregard it. However, the court denied the motion that a mistrial be granted. In denying the latter motion, the court stated that it had confidence that the jury would follow the instructions of the court. The court then recalled the jury and gave the instruction quoted in the margin.[2]

At the close of the case counsel for Thomas did not request any further instruction pertaining to the excluded evidence. The court, however, gave certain closing instructions bearing upon the matter, as quoted below.[3] After the jury retired, counsel for Thomas stated that he had no objection to the instructions given. In the motion for judgment of acquittal or, in the alternative, for a new trial, no point was made of the denial of the motion for a mistrial or of any other court action with regard to the matters described above.

We turn now to the asserted errors in connection with the described trial events.

No objection was made to the questions asked of Donald Brewer which elicited the information that the check in question was stolen from his car. Nor was the admission of that testimony plain error affecting substantial rights such as might be noticed, under Rule 52(b), Federal Rules of Criminal Procedure, although not brought to the attention of the court. This evidence was, in fact, relevant and material. It tended to show

---

am referring to, Your Honor. MR. CHRISTENSEN: He did say that he had stolen the guns in Wyoming.

"THE COURT: What are you offering the guns here for? MR. CHRISTENSEN: To show that the defendant had the requisite knowledge and intent to show that in regard to the checks, the check was stolen and forged and placed in interstate commerce and the guns were introduced that the defendant had knowledge and intent as to the theft.

"MR. GEE: And Mr. Liday's statement shows that the checks were stolen by him and the guns too. THE COURT: I was under the impression you were offering the guns to tie this defendant in with the taking of the checks. If you are admitting now that somebody else took the guns— MR. CHRISTENSEN: We are not admitting it, Your Honor. There is a statement by Mr. Liday, whether it is believable or not, that is not taken under oath—there is a statement—any person could have made the statement, but it is not evidence or a part of the record and I don't think it is believable. It is there, I must admit, it is there.

"THE COURT: This statement of Mr. Liday, or his testimony is not in evidence before the Court or jury. The Court will instruct the jury that this man is not on trial for anything other than the charge here. I cannot take into consideration some statement that somebody made on the outside, that is not under oath or subject to cross-examination.

The only reason I thought that the guns were being offered, and I let them in, was to tie this man in to the taking of the checks. If you are offering them for some other purpose, I would have a serious doubt about it.

"MR. CHRISTENSEN: We are offering that the checks were stolen from Wyoming and the guns were stolen at the same time and the defendant had the knowledge of them and he sold the guns, and that was the purpose, Your Honor."

2. "THE COURT: Ladies and Gentlemen of the jury: The Court has excluded from your consideration Exhibits No. 2 and 3, which were the two guns. They have been stricken from the evidence and the testimony of Mr. MacPherson concerning the purchase and sale of the guns is stricken from the record. You will disregard any of that testimony in regard to the charge that we are trying here. The matters came to the Courts [sic] attention which justify this. I am going to ask you, and I know it is difficult to strike something after you have heard or seen it, but I am going to ask you to set it out of your mind in regard to the guns. You are not to consider any of the testimony or any of the evidence concerning the guns."

3. " * * * Any evidence as to which an objection was sustained by the Court, and any evidence ordered stricken by the Court, must be entirely disregarded."

"The defendant is not on trial for any act or conduct not alleged in the indictment."

that, whether or not Thomas had anything to do with the theft, he did not have Donald Brewer's authority to cash that check.

Likewise, no objection was made to the questions which led Donald Brewer to testify that other articles, including the two guns, were stolen from his car at the same time the check was taken. As the case progressed it became clear that the purpose of this testimony was to lay a groundwork for the testimony of MacPherson connecting Thomas with the stolen guns. If MacPherson's testimony connecting Thomas with the guns was proper, a question to be discussed below, this foundation testimony would also be proper. If the connecting testimony was improper and prejudicial, plain, reversible error would be indicated without regard to Donald Brewer's testimony.

██ One of the essential elements which the Government had to prove was that Thomas was the man who presented the check in question to Christensen at the service station. Charles Brewer testified that Thomas was present on that occasion, and entered the station. Christensen identified Thomas as the man who entered the station and presented the check to him after at least going through the motions of signing it. But the prosecution was entitled to produce any other evidence it had that would tend to establish the identity of Thomas as the person who had presented the check. Especially is this so in view of the fact that, in cross examining Christensen, counsel for Thomas tried to cast doubt on Christensen's identification of Thomas.

One way to fortify the testimony identifying Thomas as the man who presented the check would be to show, through other testimony, that he had possessed the guns which were stolen at the same time from the same car. Whether or not it was Thomas who stole the guns, evidence that he possessed them would give rise to a permissible inference that he was probably also the person who had possession of the check. This would be circumstantial evidence which at least had enough probative value to warrant its admission as proof of identity unless the other circumstances, discussed below, require a different conclusion.

It is true that, at the time of the motion to strike this testimony, counsel for the Government advised the court that it was produced to show that Thomas "had knowledge and intent as to the theft," whatever that means. But the jury was not advised of this purpose and, since the evidence was stricken, we are not required to explore the admissibility of the evidence for such a purpose. It is sufficient that the testimony would have been admissible on the question of identity subject to proper jury instructions as to its limited purpose unless inadmissible because of other circumstances now to be noticed.

Thomas argues that when it produced this testimony either intending the jury to infer therefrom that Thomas was the thief, or at least chargeable with knowing that the jury might so infer, the prosecution knew, but concealed the fact, that a Mr. Liday, incarcerated in Idaho State Penitentiary, had made a statement that he had stolen the guns. Having that knowledge, appellant argues, the prosecution should not have produced testimony which could lead to such a jury inference. At the very least, Thomas contends, the prosecution should have produced Liday as a witness. Failure to do so, Thomas asserts, was prejudicial misconduct constituting plain reversible error.

██ The well-recognized rule thus invoked is that a conviction cannot stand where a prosecutor has, either wilfully or negligently, withheld material evidence favorable to the defendant.[4] As the Sec-

---

4. See Brady v. State of Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215; Barbee v. Warden, Maryland Penitentiary, 4 Cir., 331 F.2d 842; United States ex rel. Meers v. Wilkins, 2 Cir., 326 F.2d 135; Powell v. Wiman, 5 Cir., 287 F.2d 275, 282; United States v. Zborowski, 2 Cir., 271 F.2d 661, 668.

ond Circuit said, in Zborowski, supra, note 4, 271 F.2d at 668:

> "The prosecutor must be vigilant to see to it that full disclosure is made at trial of whatever may be in his possession which bears in any material degree on the charge for which a defendant is tried."[5]

While the record does not indicate that the prosecution sought, by MacPherson's testimony, to show that Thomas had stolen the guns, we agree that it is chargeable with knowing that the jury might well draw that inference.[6] But there are other circumstances which indicate to us that, even with this knowledge, the prosecution is not chargeable with misconduct in failing to produce Liday as a witness, or in permitting MacPherson to testify, knowing of Liday's statement.

The fact that Liday had made such a statement did not conclusively establish that Thomas was not the thief and thereby bar, at the outset, any evidence which could lead to a contrary finding. But it was so persuasive in that direction that the prosecution would have been remiss had it not called opposing counsel's attention to that statement.

In its answering brief on this appeal counsel for the Government advises us that the information concerning Liday was known to Thomas' attorney before the trial because the Government had opened its file for his inspection. No reply brief was filed nor has Thomas taken any other means of disputing that statement. It is strongly corroborated by the fact that counsel for Thomas demonstrated during the trial, and before MacPherson took the witness stand, that he knew of the statement.[7] If Thomas had, in this court, disputed this assertion by the Government, we would have remanded the cause to the district court for a determination of this crucial fact. We deem this unnecessary in the absence of such a challenge.

■ Thus there was no concealment or suppression of evidence, willful or otherwise. Counsel for Thomas had the information from the Government in time

---

5. This rule, as well as the rule forbidding the prosecutor from making use of testimony known by him to be false, is based upon an underlying principle which has been expressed as follows in Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L.Ed. 1314:

> "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

6. As indicated by the colloquy quoted in note 1, the trial judge did draw that inference and, in fact, admitted the testimony of MacPherson, and the guns, only on the supposition that this evidence was intended to show that Thomas was the thief, withdrawing the evidence when it appeared that this was not the purpose.

7. In his cross-examination of Charles Brewer, before MacPherson testified, counsel for Thomas asked the following questions and received the following answers:

> "Q Do you know a younger man by the name of Bill Liday? A I know of him, I don't know him.
>
> &ast; &ast; &ast; &ast; &ast;
>
> "Q Did you have a discussion with Mr. Liday about guns or checks? A No, Sir. Q You knew of a question when Mr. Liday asked Mr. Thomas to sell a gun for him? A I had heard about it. I did not know about it. Q Were you not in the Jim Dandy Club when Mr. Liday's father came down looking for Mr. Thomas? A Yes, Sir. Q And that was over a gun that Mr. Thomas had sold for Mr. Liday? A I don't know.
>
> &ast; &ast; &ast; &ast; &ast;
>
> "Q Do you know where Mr. Liday is now? A The older fellow? Q Yes. A No, I don't. Q You know he is in the penitentiary, don't you? A No."

to call Liday as a witness or at least arrange for his deposition. He could also have objected to MacPherson's testimony on the ground of Liday's statement, leaving it to the trial court to decide upon a proper course before that testimony went to the jury. He pursued neither of these courses. Quite to the contrary, as the cross examination quoted in note 6 indicates, counsel for Thomas opened up the matter of Thomas' sale of the guns before MacPherson even took the witness stand.

█ In any event, the testimony of MacPherson was stricken, and the guns were withdrawn from evidence in the case. The court immediately gave the jury the cautionary instruction quoted in note 2, and at the close of the case gave the general cautionary instructions quoted in note 3. Counsel for Thomas requested no other instructions, and he took no objection to the instructions given. Under all of the circumstances we think Thomas received all of the relief to which he was entitled and perhaps more, and the court did not err in denying the motion for a mistrial. There was no deprivation of due process of law nor any other defect in trial procedure constituting plain, reversible error in connection with any of the matters discussed above.

█ The other asserted error relied upon as entitling Thomas to relief is the action of the trial court in holding that the evidence was sufficient to establish that the check in evidence was presented by Thomas on the occasion in question. In support of this argument, Thomas asserts in his brief that Christensen testified that the check presented to him by Thomas on December 30, 1961, was deposited on January 12, 1962. But, argues Thomas, the stamps on the reverse side of the check introduced in evidence show that that check was at a Salt Lake City bank on January 3, 1962, and was in other bank channels on January 5, 1962.

Christensen's exact testimony as to the date the check was deposited, given in answer to cross examination, was: "Well, as near as I can remember, the 12th of January." Viewed in the light of all the other testimony, we do not believe Christensen's qualified reference to the January 12th date undermines the substantiality of the evidence connecting the check presented by Thomas with the check introduced in evidence.

Having considered, on the merits, the asserted errors relied upon by Thomas, and having found no plain, reversible error, we conclude that the district court properly denied the section 2255 motion. It therefore becomes unnecessary to decide whether Dodd v. United States, 9 Cir., 321 F.2d 240, 243–246 announces the rule contended for by Thomas and, if so, whether the district court, in applying that rule, erred in rejecting the contention that, despite Thomas' timely request his court-appointed counsel failed to file a notice of appeal.

Affirmed.