Carl George SMITH, Jr.

v.

UNITED STATES of America.

Civ. A. No. 450–72–A–M.

United States District Court,
E. D. Virginia,
Alexandria Division.

Sept. 20, 1973.

Carl George Smith, Jr., pro se.

David Hopkins, Asst. U. S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

On October 10, 1969, Carl George Smith, Jr., was convicted upon a jury verdict of armed bank robbery and sentenced to twenty years confinement. Since that date, this Court has been in receipt of literally hundreds of pleadings and letters from Smith. Most were directed to a motion to vacate sentence pursuant to 28 U.S.C. § 2255 and to a petition for a writ of habeas corpus filed by the Court as an amendment to the motion to vacate C.A. No. 311–70–A–M. On November 6, 1971, the Court issued a memorandum and order denying relief, which judgment was affirmed by the Court of Appeals for the Fourth Circuit. Mem. decis. No. 71–1955 (Jan. 3, 1972). Smith has since filed innumerable documents asking the Court to reconsider its decision. By order dated November 9, 1972, the Court denied all of these requests, but held that Smith had presented a new claim based on after-acquired evidence which merited consideration. The respondent filed an answer to this claim, which answer the Court treated as a motion for summary judgment, and Smith responded with an affidavit stating with particularity the nature of the new evidence which he claimed to have acquired. Respondent's motion for summary judgment was granted and judgment was entered for the respondent on that claim.

While respondent's motion for summary judgment was pending, however, Smith submitted his own motion to amend his original petition, presenting still additional claims. By order of this Court on May 7, 1973, Smith's motion to amend was granted solely with respect to his claim that agents of the United States had suppressed exculpatory evidence at the time of his trial. As Smith's after acquired evidence claim had already been disposed of at the time of the order granting his motion to amend, there is still remaining before this Court his claim of suppression of evidence by the government. Respon-dent has filed an answer to this claim, which answer the Court now treats as a motion for summary judgment, and petitioner has responded thereto. The matter is now ready for disposition.

The relevant facts are as follows:

On March 21, 1969, at approximately 7:00 p. m., the United Virginia Bank of Reston, Virginia was robbed by a man garbed in clothing including gloves, a ski-mask and goggles so that his face and body were completely covered. The robber was armed with what was identified as a short, blue revolver. He escaped on foot from the bank with in excess of $10,000, including a certain number of marked one-hundred dollar bills, characterized as bait money. It was for this robbery that Smith was ultimately convicted.

The government's case against Smith rested entirely on circumstantial evidence. The evidence was, however, both considerable and convincing. It tied Smith to virtually all aspects of the robbery.

It appears that at the time of the robbery Smith was on parole under the sponsorship of a couple named Lundgren. Mrs. Lundgren testified that Smith had had conversations with her regarding the techniques of bank robbery and had informed her that the best way to rob a bank was to cover the body completely, using a ski-mask, goggles and gloves, to go behind the counter of the bank in order to get to big bills, and to escape on foot so that there would be no car which could be traced. In short, Smith described the almost exact set of circumstances which surrounded the actual robbery. Mrs. Lundgren further testified that her son had owned a ski-mask, identical to the one which had been worn by the robber, which had not been found since Smith had ceased living with her family.

Much of the evidence went to the manner in which Carl George Smith and his wife had spent large sums of money, often in hundred dollar bills, subsequent to the robbery. By far the most impor-

tant evidence concerned a deposit of $3,400 in hundred dollar bills made by Mrs. Smith. Federal investigators secured the possession of these bills after they had passed through several hands and discovered that several of the bait bills taken from the bank were among them. In addition, evidence disclosed that Smith and his wife had, during a short period following the robbery, made bank deposits and large expenditures totalling over $10,000, closely approximating the amount stolen. While Smith and his wife tried to explain at least some of these payments and deposits, their explanations were impeached by the fact that some of the deposits were made in banks located in areas distant from the Smiths' residence and by the fact that some of them were made in the form of money orders payable to Smith from Edward Haywood, a name later identified as Smith's alias.

Additional evidence was presented to show that Smith and his wife lived in a home which was located, by road, approximately two miles from the bank in question. By a direct, walking route, it was only one mile away. Smith, who was in excellent physical shape and looked to be much younger than his actual age of forty-five, admitted to being a long distance runner. He stated that in prison he had run approximately five miles every day. This evidence tended to link Smith with the athletic bank robber who escaped on foot.

Finally, the government presented evidence to the effect that Smith and his wife had purchased a hand weapon on March 7, 1969. The gun was described as a short, blue revolver, which fit the description of the weapon carried by the robber.

The evidence which Smith claims to have been suppressed were reports made to the Fairfax County Police by witnesses to the robbery shortly after it occurred that the robber was a "slightly built Negro teenager." That such evidence exists and was known to the prosecution is accepted by the Court, for the respondent has presented nothing which

suggests otherwise. It is also clear that such evidence was potentially exculpatory as Smith, himself, is a middle aged white man.

■ Smith correctly asserts that the deliberate withholding by the prosecution of potentially exculpatory evidence upon request violates due process. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, Smith has previously represented to this Court that no demand was ever made on either the prosecutor or the Fairfax County Police by Smith or his defense attorney for information resulting from the investigation of the robbery with which he was charged. C. A. No. 311–70–A–M, Amended Motion to Vacate Sentence, filed August 4, 1970, at 14. Therefore, Smith has failed to make out a claim of deliberate suppression of requested information as was found in Brady v. Maryland, supra, at 84, 83 S.Ct. 1194.

■■ Nevertheless, under some circumstances, the prosecution is held to a duty of making an affirmative disclosure of potentially exculpatory evidence, even though no request has been made. See, e. g., Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842, 845 (4th Cir. 1964); United States v. Wilkins, 326 F. 2d 135, 137 (2d Cir. 1964). Accordingly, relief under 28 U.S.C. §§ 2254, 2255 has been held available even though no request has been made for disclosure, where the undisclosed evidence is of such great importance to the defense that its absence at trial has rendered the defendant's conviction fundamentally unfair. See, e. g., Barbee v. Warden, Maryland Penitentiary, supra, esp. at 947 of 331 F.2d; United States v. Wilkins, supra. It is no excuse that the prosecutor was not acting in bad faith. United States v. Wilkins, supra, at 138–139 of 326 F.2d. Nor is it even a defense that the prosecutor himself was unaware of the evidence in question, where it was in the possession of other government officials. Barbee v. Warden, Maryland Penitentiary, supra, at 846 of 331 F.2d.

■■ There is one obvious principle that derives from the decisions in Barbee v. Warden, Maryland Penitentiary, *supra,* and United States v. Wilkins, *supra.* That is, where the government is found to have been in possession of evidence which is vital to the defendant's case and the defendant, himself, discovers the existence of such evidence only after trial, the absence of due diligence to discover the evidence before trial is no bar to relief under 28 U.S.C. §§ 2254, 2255. Barbee v. Warden, Maryland Penitentiary, *supra,* at 845. This is in contrast to the usual case of after-acquired evidence where due diligence prior to trial is a prerequisite to such relief. Seward v. United States, Mem. decis. No. 71–1679 (4th Cir. Nov. 10, 1972); United States v. Hoffa, 382 F.2d 856 (6th Cir. 1967). Beyond that, however, the Court considers the appropriate standard to be applied in determining whether the evidence is of such vital importance that relief should be granted under 28 U.S.C. §§ 2254, 2255 is the standard applied with respect to after-acquired evidence. See Kyle v. United States, 297 F.2d 507 (2nd Cir. 1961). That standard is whether the introduction of such evidence at trial would have been likely to have affected the result.[1] Meyers v. United States, 207 F.2d 413 (4th Cir. 1953); Seward v. United States, Mem. decis. No. 71–1679 (4th Cir. Nov. 10, 1972). The Court concludes that the evidence in question in this case does not meet that standard.

■ The flaws in the evidence which Smith claims to have been suppressed are considerable. If introduced at trial its credibility would be doubtful, at best, in view of the measures taken by the robber to hide his identity, including his age and race. In addition, it in no way rebuts the elements which the government presented to prove the charge against Smith. The evidence does not, for example, explain how Mrs. Smith got possession of the bait bills or any of the coincidences between the description that Smith gave Mrs. Lundgren of what he considered a perfect bank robbery and the actual robbery of the Reston bank. In short, this Court is convinced that the evidence against Smith overwhelmingly supported his guilt and that the evidence which he claims to have been suppressed, had it been presented at trial, would not have resulted in an acquittal. Indeed the statement that the robber was "a slightly built Negro teenager" was no more than a subjective opinion of one or more of the observers.

■ Moreover, there is a second reason why petitioner's claim must fail. A prerequisite to relief under 28 U.S.C. §§ 2254, 2255 based on a claim of suppression of evidence by the government is that the evidence in question was not otherwise known and available to the defendant or his attorney. Rosenberg v. United States, 360 U.S. 367, 371, 79 S. Ct. 1231, 3 L.Ed.2d 1304 (1959); United States ex rel. Bishop v. Commonwealth of Pennsylvania, 233 F.2d 208 (3d Cir. 1956).

Smith openly admits that he and his attorney were both aware of the investigation conducted by the Fairfax County Police. Petitioner's *Traverse to Respondent's Answer,* filed June 7, 1973, at p. 2. In addition, Mr. Skahan, Smith's defense attorney in his criminal proceedings, has testified before this Court, in Smith's previous § 2255 hearing, that he had been informed prior to trial by some witnesses that they had reported to the Fairfax County Police, and perhaps FBI agents, that the suspect was "young or youngish." Civil Action 311–70–A–M, Tr. at 18. Skahan has also testified that he had been informed by one witness that she had similarly reported that

---

1. By contrast, the government's deliberate suppression of requested information may cast such suspicion on the general administration of justice with respect to a defendant's conviction, that relief under 28 U.S.C. §§ 2254, 2255 would be available on a lesser showing of prejudice to the defendant's case resulting from the unavailability of such evidence to him at trial. See Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842, 847 (4th Cir. 1964) and Kyle v. United States, 297 F.2d 507 (2d Cir. 1961).

**1150**

the suspect was a Negro. Civil Action 311–70–A–M, Tr. at 19–20. Smith's attorney was therefore sufficiently aware of the evidence in question that he could, if he had considered it appropriate, have pursued the matter further by reviewing the records of the FBI and the Fairfax County Police. See Barbee v. Warden, Maryland Penitentiary, *supra*, at 845, esp. at note 8 of 331 F.2d (specifically noting the absence of anything in the record to suggest such awareness by the defense attorney there).

█ Smith contends, however, that although his defense attorney was aware of one witness who had reported that the robber was a Negro, this does not excuse the prosecutor's failure to disclose the identity of other witnesses who had made similar reports. However, Smith's argument must surely fail as the evidence available through the disclosure of the additional witnesses would merely have been cumulative to that already available to his attorney through his knowledge of one such witness. The Court cannot, therefore, conclude that the defense attorney's possible lack of knowledge of the additional witnesses affected the fundamental fairness of Smith's conviction. *Cf.* Seward v. United States, *supra*.

█ This is so, particularly in view of the fact that Smith's defense attorney chose not to pursue the matter of the witnesses' reports as to the robber's identity, in spite of his knowledge that one witness had reported the robber to be Negro and others had reported him to be young or youngish.[2] It appears that this decision by counsel Skahan was based upon his knowledge, from discussion with the prosecutor, that no witness to the robbery would testify as to the robber's identity.[3] Rather, his defense strategy was to attempt to pick holes in the circumstantial case which the government had built against Smith. Civil Action No. 311–70–A–M, Tr. at 52–53. That decision by counsel Skahan, right or wrong, was a legitimate tactical decision.[4] It does not suggest ineffective assistance of counsel, an issue previously raised by Smith before this Court (C.A. No. 311–70–A–M), or any other fundamental miscarriage of justice with respect to Smith's conviction. See Barbee v. Warden, Maryland Penitentiary, *supra*, at 846.

Accordingly, respondent's motion for summary judgment will be granted and judgment will be entered for the respondent.

An appropriate order shall issue.

2. It is worth noting that if Smith's attorney had chosen to pursue this matter further, he would undoubtedly have reviewed the investigation reports of the Fairfax County Police and thereby have discovered the identity of any other witnesses who had made similar reports.

3. Smith's defense attorney, Mr. Skahan, has testified before this Court in Smith's previous § 2255 hearing that he had received from the Asst. United States Attorney the substance of the government's case and the names of witnesses to be called for the

prosecution. C.A. No. 311–70–A–M, Tr. at 17. In fact, no witnesses were presented by the prosecution to directly identify Smith as the robber, as a ski mask, goggles and gloves had been used by the robber to hide his identity, including his age and race.

4. The Court does not ignore the fact that defense counsel might have used the evidence in question as an affirmative defense tactic, in spite of its questionable credibility and in spite of the absence of direct evidence of the robber's identity to be rebutted.