## ·ROSENBERG *v.* UNITED STATES.

No. 451. Argued April 28, 1959.—Decided June 22, 1959.

*Edward M. Dangel* argued the cause for petitioner. With him on the brief was *Leo E. Sherry.*

*Beatrice Rosenberg* argued the cause for the United States. With her on the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey* and *Kirby W. Patterson.*

*A. L. Wirin* and *Fred Okrand* filed a brief for Arthur L. Harris, Sr. et al., as *amici curiae,* in support of petitioner.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Petitioner was convicted in the District Court for the Eastern District of Pennsylvania, 146 F. Supp. 555, for transporting in interstate commerce a check obtained by the perpetration of a fraud to which he had been a party. 18 U. S. C. § 2314. That conviction was reversed by the Court of Appeals for the Third Circuit on the ground that *Jencks* v. *United States,* 353 U. S. 657, which had been decided after conviction but before appeal, required production for petitioner's inspection of certain statements in the prosecutor's possession. 245 F. 2d 870. The second trial thus ordered also resulted in a conviction, 157 F. Supp. 654, which was sustained by the Court of Appeals for the Third Circuit, 257 F. 2d 760. We granted certiorari, 358 U. S. 904, limited to the questions of the application of the *Jencks* rule to this prosecution, the effect of the statute enacted establishing legislative

rules concerning the production of documents, 18 U. S. C. (Supp. V) § 3500, and the propriety of the ruling of the Court of Appeals that if the trial judge had erred in failing to deliver to petitioner certain documents, the error was harmless and therefore not grounds for reversal.

In the second trial, upon a demand for production for inspection of Federal Bureau of Investigation files, the United States Attorney delivered to the trial judge, and the trial judge in turn gave to petitioner's counsel, numerous documents from the Government's files. Many of these would not have been required to be provided under either the *Jencks* decision or the statute enacted subsequent to it. Petitioner complains that the few documents withheld by the trial judge were required to be submitted for his inspection by our opinion in *Jencks* and that the failure to give him that opportunity requires a reversal. We have today held in *Palermo* v. *United States, ante,* p. 343, that since its enactment 18 U. S. C. (Supp. V) § 3500 and not the *Jencks* decision governs the production of statements of government witnesses for a defendant's inspection at trial.

In accordance with 18 U. S. C. (Supp. V) § 3500 (c), the material withheld was preserved in the record to permit review of the correctness of the trial judge's rulings. As did the Court of Appeals, we have reviewed the documents withheld by the trial judge. Two are reports by FBI investigators which in no sense complied with subsection (e) of the statute. They were neither signed nor otherwise adopted by any witness at the trial, nor were they reproductions as statutorily required of any statement made by any witness at the trial. A third document did comply with such requirement. It is a typewritten copy of a statement given by Rosenberg's confessed associate in the crime, Meierdiercks, to the FBI. It is signed by Meierdiercks and its contents were pertinent to the trial of the case. However, the original handwritten

statement, of which this was, as already stated, merely a copy, was itself given to petitioner's attorney. No relevant purpose could have been served by giving petitioner's counsel a typewritten copy of a document which he had already been given in its original form, no advantage to the petitioner was denied by withholding it.

The last group of documents in controversy is a series of letters written by the victim Florence Vossler to the FBI. They were signed by her and thus met the requirement of subsection (e). However, of the six letters withheld by the trial judge, five clearly fail to meet the statutory requirement that only that statement "which relates to the subject matter as to which the witness has testified" need be produced. 18 U. S. C. (Supp. V) § 3500 (b). These five were totally irrelevant to the proceedings. In the sixth of this group of letters, Florence Vossler wrote to the Assistant United States Attorney that her memory had dimmed in the three years that had passed since the fraud had been perpetrated and that to refresh her failing memory she would have to reread the original statement she had given before the first trial to the FBI.

A statement by a witness that she fears her memory as to the events at issue was poor certainly "relates to the subject matter as to which the witness has testified" and should have been given to defendant. This was recognized as error by the Court of Appeals. 257 F. 2d 760, 763. That court, however, found that the same information which was contained in the letter was revealed to defendant's counsel by statements made by Florence Vossler under cross-examination and upon questioning by the trial judge. A review of the record, portions of which are reproduced in an Appendix, precludes us from rejecting the judgment on which the Court of Appeals based its conclusion that the failure to require

production of this letter was empty of consequence. Since the same information that would have been afforded had the document been given to defendant was already in the possession of the defense by way of the witness' admissions while testifying, it would deny reason to entertain the belief that defendant could have been prejudiced by not having had opportunity to inspect the letter.

An appellate court should not confidently guess what defendant's attorney might have found useful for impeachment purposes in withheld documents to which the defense is entitled. However, when the very same information was possessed by defendant's counsel as would have been available were error not committed, it would offend common sense and the fair administration of justice to order a new trial. There is such a thing as harmless error and this clearly was such. The judgment of the Court of Appeals for the Third Circuit is therefore

*Affirmed.*

[For dissenting opinion of MR. JUSTICE BRENNAN, joined by THE CHIEF JUSTICE, MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS, see *post,* p. 373.]

## APPENDIX TO OPINION OF THE COURT.

Mr. Singer. "Miss Vossler, it has been quite sometime since you have testified. Have you had an opportunity within the last six months or so to go over any previous testimony or statements which you might have given with reference to this matter? Have you spoken to anyone—"

Miss Vossler. "You mean testimony that I gave?"

Mr. Singer. "That is correct."

Miss Vossler. "The testimony that I gave in this court?"

The Court. "Yes, in June, 1956."

Miss Vossler. "Yes. No, I haven't seen anything."

372

The Court. "You haven't seen—"

Miss Vossler. "Any testimony."

The Court. "—the transcript of that testimony—"

Miss Vossler. "No, sir."

The Court. "—which was in books like this (indicating)?"

Miss Vossler. "No, no, Your Honor, nothing."

The Court. "Well, have you seen any statement which you gave to agents of the Federal Bureau of Investigation?"

Miss Vossler. "Yes, because I had a copy of ·the first statement that I gave on January 24. That is the only statement I had."

The Court. "Have you got that with you?"·

Miss Vossler. "No, I haven't, now."

The Court. "When did you last see it?"·

Miss Vossler. "Well, Mr. Bechtle asked that I leave it with him upstairs."

The Court. "When was that?"

Miss Vossler. "Monday when I arrived here."

The Court. "In other words, you looked it over Monday?"·

Miss Vossler. "Well, I glanced at it Monday. I didn't read it line for line."

The Court. "Well, when did you last read it line for line?"

Miss Vossler. "Well, last week, because I had it at my home."

The Court. "Last week you read over the statement—"

Miss Vossler. "Yes."

The Court. "—of January 24, you say, 1955?"

Miss Vossler. "Yes. That is when the FBI agents came · to my home."

The Court. "I see. Last week. You have that statement, don't you?"

Mr. Singer. "I have it here."

Miss Vossler. "That is the only statement that I have seen at all, at any time."

Record, pp. 330–332.

Further evidence of Florence Vossler's loss of clear recollection came to defendant's attorney during the course of the cross-examination. He asked the witness to identify a Mr. McComb.

Miss Vossler. "Well, let me see if I can remember. Mr. McComb came to my house one time—you see, it is always possible to find the names of people who buy leases or purchase leases—"

Mr. Singer. "May I interrupt you one moment, please. In all fairness to the witness, Your Honor, I feel that I should introduce this report and permit her to refresh her recollection."

The Court. "Yes, thank you. What number is it?"

Mr. Singer. "This is Court's Exhibit No. 10, which is a summary of various statements given by Miss Vossler to the FBI. And I ask Miss Vossler to read Page 2 so that she may properly answer the questions."

Record, pp. 345–346.

Mr. Justice Brennan, with whom The Chief Justice, Mr. Justice Black and Mr. Justice Douglas join, dissenting.

The Government's case against petitioner rested on the testimony of Charles Meierdiercks, a confessed accomplice in the swindle that concerns us here, and Florence Vossler, the victim. Meierdiercks testified, in considerable detail, that he and the petitioner obtained Miss Vossler's check by fraud and that petitioner transported that check in interstate commerce before cashing it. Miss Vossler's testimony corroborated that of Meierdiercks to a considerable extent, but did not implicate petitioner. Since a conviction would have been impossible unless the jury

374

believed Meierdiercks, it seems apparent that the Government put Miss Vossler on the stand in the hope that her detailed corroboration of 'Meierdiercks' story would lend credence in the eyes of the jury to the testimony of the confessed swindler. If the defense could have effectively impeached Miss Vossler, the Government would have had to rely on the essentially uncorroborated testimony of Meierdiercks for a conviction.

Defense counsel moved at the end of Miss Vossler's direct testimony for production of "pertinent material in the possession of the government concerning this particular witness." The trial judge, pursuant to this motion, ordered the delivery of some material to the defense but did not include a letter to the Assistant United States Attorney—handwritten and signed by Miss Vossler shortly before the trial—which stated in part: "As a matter of fact, as time goes on, I am more hazy about the whole transaction and might not fare too well under a cross-examination, though I have here my statement with which to refresh my memory. It will be 3 years in January 1958 since the above swindle took place; therefore, I could not be accurate as to day to day occurrences after such a period, though, as stated, possibly a review of my statement would help." The Court of Appeals and this Court both agree that this letter was a statement relevant to the subject matter as to which the witness testified on direct examination, and thus should have been given to the defense under the command of the *Jencks* statute, 18 U. S. C. (Supp. V) § 3500. The Court holds, however, that: "There is such a thing as harmless error and this clearly was such." I dissent because it plainly appears that the harmless error doctrine should not be invoked in the circumstances of this case.

The principle underlying our decision in *Jencks v. United States,* 353 U. S. 657, was that it is impossible

for a judge to be fully aware of all the possibilities for impeachment inhering in a prior statement of a government witness, "Because only the defense is adequately equipped to determine [its] . . . effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense . . . ." 353 U. S., at 668–669.

The *Jencks* statute was clearly designed to effectuate this principle. The statute, while delimiting the statements which are to be turned over to the defense, obviously comprehends that statements which are producible under it must be given to the defense regardless of a judge's opinion as to how useful they might be on cross-examination, for only the defense can fully appreciate their possible utility for impeachment. This is the rationale of the *Jencks* case, and this is the rationale of the statute. As the Senate reported: "the proposed legislation, as here presented, reaffirms the decision of the Supreme Court in its holding that a defendant on trial in a criminal prosecution is entitled to relevant and competent reports and statements in possession of the Government touching the events and activities as to which a Government witness has testified at the trial ; . . . ." S. Rep. No. 981, 85th Cong., 1st Sess,, p. 3; and see H. R. Rep. No. 700, 85th Cong., 1st Sess., pp. 3, 4. Although we need not go so far as those courts which have suggested that the harmless error doctrine can never apply as to statements producible under the statute, see *Bergman* v. *United States*, 253 F. 2d 933; *United States* v. *Prince*, 264 F. 2d 850, fidelity to the principle underlying *Jencks* and the *Jencks* statute requires, I think, that when the defense has been denied a statement producible under the statute, an appellate court should order a new trial unless the circumstances justify the conclusion that a finding that such a denial was harmful error would

be clearly erroneous. In that determination, appellate courts should be hesitant to take it upon themselves to decide that the defense could not have effectively utilized a producible statement. This must necessarily be the case if the appellate court is to give effect to the underlying principle of *Jencks,* affirmed by the statute, which, I repeat, is that "only the defense is adequately equipped to determine [its] . . . effective use for purpose of discrediting the Government's witness . . . ." Indeed, another consideration which should move the appellate court to be especially hesitant to substitute its judgment as to trial strategy for that of defense counsel is that, under the procedure established by the statute, the defense does not see the statement and has no opportunity to present arguments showing prejudice from its withholding.

In short, only a very strict standard is appropriate for applying the harmless error doctrine in these cases. Under such a standard, I cannot conclude that defense counsel could not have put Miss Vossler's letter to effective use in impeaching her. Although she stated on cross-examination that she had refreshed her memory before testifying by reference to a statement she had made previously, this oral testimony was obviously not as useful for impeachment purposes as her written admission shortly before trial that her memory of the events in question was failing. Defense counsel, if armed with the letter, might well have probed more deeply than he did in testing how her memory of the events to which she testified was refreshed. The trial strategy of defense counsel, familiar with his case and aware of the various possible lines of defense, might have been entirely different had he been in possession of the letter. At least I cannot bring myself to assume that this would not have been the case.

This is not a case in which the statement erroneously withheld from the defense merely duplicated information

already in the defense's possession;* it is not a case in which the witness' testimony was unimportant to the proofs necessary for conviction; and it is not a case in which the witness' statement was wholly void of possible use for impeachment. In this case, the defense was denied a letter written by a key government witness shortly before trial making statements which raised serious questions as to her memory of the events about which she testified in considerable detail at the trial. In such a circumstance, I think it was error for the Court of Appeals to second-guess defense counsel as to the possible use of the letter on cross-examination. If we are to be faithful to the standards we have set for ourselves in the administration of criminal justice in the federal courts we must order a new trial in a case such as this where the possible utility to the defense of the erroneously withheld statement cannot be denied. "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, *or if one is left in grave doubt*, the conviction cannot stand." *Kotteakos* v. *United States,* 328 U. S. 750, 765. (Emphasis supplied.)

I would reverse the judgment of the Court of Appeals.

---

*The defense was not given a typed statement signed by Meier-diercks which was discoverable under the statute, but this was harmless error since the defense was given a handwritten statement from which the typed statement had been copied.