Gloria J. ALEXANDER, Appellant,

v.

UNITED STATES of America, Appellee.

Margaret M. WATKINS, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 18124, 18125.

United States Court of Appeals District of Columbia Circuit.

Argued March 11, 1964.

Decided April 16, 1964.

Petition for Rehearing en Banc Denied June 19, 1964.

Certiorari Denied Dec. 7, 1964.

See 85 S.Ct. 336.

---

Mr. M. Michael Cramer (appointed by the District Court), Washington, D. C., with whom Mr. Thomas Sisk (appointed by this court), Washington, D. C., was on the brief for appellant in No. 18124, argued for both appellants.

Miss Ruth E. Hankins (appointed by the District Court), Washington, D. C., was on the brief for appellant in No. 18125.

Mr. Anthony A. Lapham, Asst. U. S. Atty., with whom Mr. David C. Acheson, U. S. Atty., and Messrs. Frank Q. Nebe-

ker and Daniel Rezneck, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and WASHINGTON and McGOWAN, Circuit Judges.

PER CURIAM:

Appellants (two women) met the complainant (a man) in a bar and had drinks with him. When he left they followed him, seized him, and took a roll of bills from his pocket. A police officer happened to witness the later stages of the affair and arrested them on the spot. They were indicted for robbery and convicted of assault with intent to commit robbery.

In defense appellants say they had given the complainant a dollar with which to buy whiskey and were seeking to recover their money. They submitted that version to the jury, but as the verdict indicates, that body declined to accept it.

Appellants also present a point under the so-called *Jencks* statute.[1] Inquiry was made into the matter at the trial. It was established that the officer had made an original pencil draft of a report, that the draft had been given to a stenographer at police headquarters who made a typewritten version of it, and that the officer signed it. The typed report was produced at the trial and used to impeach the officer's testimony as to the events he witnessed. As to the pencil draft the officer said: " * * * it went in the trash after it was—* * * It probably went in the trash after the clerk typed it." All who heard this testimony appear to have taken it at face value as establishing that the notes had been destroyed in the usual course of business.[2] The defense in particular seized upon the fact of the destruction of the notes, and urged upon the court that that fact alone necessitated the striking of the officer's testimony. It did not suggest to the court, by motion or otherwise, that a hearing be held to inquire into either the fact or the circumstances of the destruction.

1. 71 STAT. 595 (1957), 18 U.S.C. § 3500.

2. In his interrogation of the officer, defense counsel himself referred to the handwritten statement as "The one in the trash."

Appellants now say the trial judge should, upon his own initiative, have held a hearing to determine whether the original pencil draft of the policeman's report had been destroyed. As the Supreme Court pointed out in Campbell v. United States,[3] the inquiry conducted by the judge upon such a matter is not an adversary proceeding controlled by rules as to burden of proof or persuasion, but is simply a proceeding necessary to aid the judge to discharge the responsibility laid upon him to enforce the statute. The trial judge in the case at bar, having the officer before him and hearing his testimony, was satisfied there was no cause for a hearing. The record indicates that the defense was similarly satisfied. The only objective of a hearing would have been to determine whether the throwing of the pencil notes into the trash had been in bad faith or not in normal course. No suggestion to that effect was made at the time. We cannot say the trial judge committed reversible error in failing to initiate an inquiry which no one who heard the officer's testimony thought necessary.

As to the argument that the destruction of the pencil notes after they had been typed and the typed copy signed made the officer's testimony inadmissible, Killian[4] is to the contrary.

Affirmed.

WASHINGTON, Circuit Judge (dissenting):

The pertinent requirements of the Jencks Act, 18 U.S.C. § 3500 (1958), are as follows:

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. * * *

"(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. * * *

"(d) If the United States elects not to comply with an order of the court under paragraph (b) or (c) hereof to deliver to the defendant any such statement * * * the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section * * * means—

"(1) A written statement made by said witness and signed or otherwise adopted or approved by him * * *."

Appellants were found guilty of assault with intent to rob. Officer Brown testified that he observed the complaining witness, Mitchell, walking along the street. The appellants left a restaurant, and began pursuing Mitchell, walking at a fast rate. As they came close to him they began walking in the shadow of trees and ducking in and out between parked cars. Appellant Watkins testified that they had given Mitchell a dollar to purchase a bottle of whiskey, and ran after him to recover that money. There was contradictory testimony with regard to what transpired when appellants caught up with Mitchell.

The manner in which appellants approached Mitchell was a significant element in an evaluation of appellants' intent. Officer Brown's testimony suggested a stealthy approach. A written police report, which contained his signature, however, made no mention of hiding be-

---

3. 365 U.S. 85, 95, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961).

4. Killian v. United States, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961).

hind cars, trees, and so forth. He explained away another inconsistency between his testimony and the report by stating that this report was merely a digest of a handwritten statement he had submitted to the clerk at the police precinct; that statement was "full length"; it "had more." When asked whether he had the handwritten statement with him, he replied: "No. It was given—it went in the trash after it was [Q. Where?] A. It probably went in the trash after the clerk typed it. They just digest on this form." Counsel for appellant Watkins made a demand for the handwritten statement and argued that the destruction of the statement was cause for striking the officer's testimony. The court rejected these motions but failed to order a hearing to determine whether the statement had in fact been destroyed and the circumstances of its destruction. This, I think, was error.

The handwritten statement, if it were in existence, clearly related to the subject matter of the witness' testimony. That statement may well have vitiated the officer's attempt to explain away the inconsistency between his testimony and the police report. "An appellate court should not confidently guess what defendant's attorney might have found useful for impeachment purposes in withheld documents to which the defense is entitled." [1]

Having been made aware of the existence of a "Jencks" statement the trial judge had an obligation to determine whether that statement had been destroyed and whether such destruction was in good faith and in accord with normal practice. Killian v. United States, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961). He should have either summoned on his own motion the clerk who prepared the "digest" or required the Government to produce him. Campbell v. United States, 365 U.S. 85, 94, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961). The statute "implies the duty in the trial judge affirmatively to administer the statute in such way as can best secure relevant and available evidence necessary to decide between the directly opposed interests. * * *." 365 U.S. at 95, 81 S.Ct. at 427.

It is true that defense counsel appears to have "assumed" that the handwritten notes had been destroyed. But I do not think this relieved the District Judge and the Government of the responsibilities imposed on them by the Act and by the Killian and Campbell cases to determine (1) whether the notes were in fact destroyed; (2) whether, if they were, this was in the proper and normal course of business or otherwise in good faith; and (3) whether, if they were not destroyed, they should have been produced, and if the failure to produce them was prejudicial to appellants' defense at trial.

I think the record should be remanded to the District Court to conduct such a

---

1. Rosenberg v. United States, 360 U.S. 367, 371, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). In that case the witness had written a letter to the Assistant United States Attorney, in anticipation of trial, indicating that her memory had dimmed, and that to refresh her memory she would have to reread the statement she made to the FBI. However, at the trial, the witness' testimony informed the defense counsel, and the jury, that her memory was quite poor. In a five to four opinion, the Court held that "Since the same information that would have been afforded had the document been given to defendant was already in the possession of the defense by way of the witness' admissions while testifying, it would deny reason to entertain the belief that defendant could have been prejudiced by not having had opportunity to inspect the letter." Ibid. In the instant case the officer made no self-impeaching admission. On the contrary, he attempted to bolster his testimony with an explanation.

The Court, in Rosenberg, also held that "No relevant purpose could have been served by giving petitioner's counsel a typewritten copy" of a statement made by another witness since the defendant had been given the original handwritten statement. 360 U.S. at 370, 79 S.Ct. at 1233. In the instant case the original handwritten statement, which was not produced, may have proved highly relevant as a tool for impeaching the police officer.

hearing. Cf. Moore v. United States, 117 U.S.App.D.C. 254, 328 F.2d 555 (1964); Williams v. United States, 117 U.S.App.D.C. 206, 328 F.2d 178 (1963), and cases cited.