**UNITED STATES of America,**
**Appellee,**

v.

**Nicholas STEN, Defendant-Appellant.**

**No. 205, Docket 27299.**

United States Court of Appeals
Second Circuit.

Argued Dec. 8, 1964.

Decided March 8, 1965.

---

Robert M. Morgenthau, U. S. Atty., Southern District of New York (David M. Dorsen, Neal J. Hurwitz, John S. Martin, Jr., Asst. U. S. Attys., of counsel), for appellee.

Anthony F. Marra, New York City, (James M. Denny, New York City, of counsel), for defendant-appellant.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

Defendant Sten was tried in the United States District Court for the Southern District of New York, before Judge Murphy sitting without a jury, and was convicted of having participated in the sale of stolen furs in violation of 18 U.S.C. §§ 2315 and 2. The facts regarding the theft and disposal of the furs are set forth in United States v. Cardillo, 316 F. 2d 606, 609–610 (2 Cir.), cert. denied, 375 U.S. 822, 857, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963), an appeal by six codefendants, and need not be repeated here. Sten's appeal was not considered with the other appeals because, through no apparent neglect by him, no brief was filed for him and no one participated on his behalf in the oral argument, id. at 610 n. 1. After the denial of the government's subsequent motion to dismiss Sten's appeal for lack of prosecution, counsel was assigned to represent him.

■ Sten claims there was insufficient evidence to support a finding that he knew the furs were stolen. It is true that there was no direct testimony to this effect, but there was more than enough other testimony, clearly admissible and never contradicted, from which the trial judge might infer guilty knowledge on Sten's part. According to Ohrynowicz, one of the thieves and the government's chief witness, Sten brought Ohrynowicz and the purchaser of the furs together to arrange final details of the sale, and Sten actually transmitted payments for the furs from the purchaser to Ohrynowicz. Thus, Sten and the purchaser were in contact with each other throughout the transaction. The purchaser knew that the furs were stolen, and if Sten was not the person who told him so, it was entirely reasonable for the trier of fact to believe that this circumstance was touched upon during their dealings. Furthermore, in Sten's presence, highly suspicious arrangements were made for delivery of the furs. The purchaser told Ohrynowicz, "I can't have you come up tomorrow because there will be too many people around." Instead, as Ohrynowicz

testified, "I would deliver the furs Saturday afternoon at two o'clock sharp, he would be standing in front of the building by himself, and all I was to do was to pull the car up, if everything was all right he would nod, I should take the furs out of the car and walk right into the building." [1]

Sten also claims that certain evidence against him was wrongly admitted because it was seized in violation of the Fourth Amendment of the Federal Constitution. The evidence was not seized pursuant to a search warrant, but in connection with Sten's arrest for which the government did have a warrant. This evidence was a business card with the handwritten notation "1606 G. Wash." on the back; Room 1606 of the George Washington Hotel was the place where Ohrynowicz kept the furs while arranging their sale. Sten contends that the card should not have been admissible into evidence, because the arrest warrant was not issued upon probable cause, and, moreover, because the card was merely evidentiary matter not subject to permissible search and seizure.

These objections were not offered intelligibly during the trial, and therefore we may notice them only if they reveal "[p]lain errors or defects affecting substantial rights." Fed.R.Crim.P. 52 (b). We hold that admission of the card did not constitute plain error. Although we have serious doubts about the validity of the arrest warrant, had Sten's objection on this ground been particularized at the trial the government might well have been able to show that the arrest was justified without the warrant. See, e. g., Draper v. United States, 358 U.S. 307, 312–314, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Elgisser, 334 F. 2d 103, 109–110 (2 Cir.), cert. denied, 379 U.S. 879, 85 S.Ct. 148, 151, 13 L.Ed. 2d 86 (1964). The arrest was based on information supplied by Ohrynowicz, information which, testified to at trial, was sufficient to convict Sten.

Likewise, the government might have been able to show, if indeed it had not already shown, that the card was an instrumentality of the crime. See, e. g., Abel v. United States, 362 U.S. 217, 237–238, 80 S.Ct. 683, 4 L.Ed.2d 1019 (1960); Grillo v. United States, 336 F.2d 211, 213 (1 Cir. 1964), cert. denied, 85 S.Ct. 669 (Jan. 18, 1965). The address seemingly was necessary to enable Sten to direct prospective purchasers to the furs, particularly in view of the fact that Ohrynowicz was registered at the hotel under a false name.[2]

Sten claims, lastly, that pre-trial statements by two government witnesses, labeled GX 27, GX 28, GX 46, GX 47, and GX 48, were wrongly withheld from him during the trial, in violation of the Jencks Act, 18 U.S.C. § 3500. One of these witnesses was Ohrynowicz, who testified to the crime itself; the other was Bergholtz, a government agent who testified concerning the arrest of Sten and the seizure of the business card. Sten asks us to review the statements so as to determine whether the trial court erred in ruling that they did not relate to the subjects about which the witnesses had testified. See 18 U.S.C. § 3500(b).

1. Because this evidence was much more than sufficient to prove Sten's guilty knowledge, we need not decide whether other evidence bearing on this issue was hearsay and therefore wrongly admitted. Inasmuch as the case was tried without a jury any error in this regard, at least on the record before us, would be harmless within the meaning of Fed.R.Crim.P. 52(a).

2. We need not consider the government's alternative argument, based on Fed.R.

Crim.P. 41(c), that Sten made no pretrial motion to suppress use of the card as evidence, although he had an opportunity to do so during the pre-trial hearing on the admission of evidence, at which time he allegedly was aware of the fact that the card had been seized; and, the trial record being unclear as to the grounds the court relied on for its ruling, that the court may have denied Sten's motion to suppress at the trial because he had made no pre-trial motion to suppress.

■■ The ruling of the trial court on this question cannot be overturned unless clearly erroneous. United States v. Cardillo, supra, 316 F.2d at 616; cf. Campbell v. United States, 373 U.S. 487, 492–493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963). We hold that the trial court committed no error as to the pre-trial statements marked GX 28, GX 46, and GX 48. GX 28 mainly consists of letters by Ohrynowicz to the government prosecutor; they mention Sten only once and in a context far afield from the crime about which Ohrynowicz testified. GX 46 and GX 48 are merely interview logs kept by Bergholtz, who gave no testimony at the trial regarding interview interrogations. Likewise, the trial court committed no error as to most of the pre-trial statements numbered GX 27 and GX 47. GX 27 is made up of reports of interviews with Ohrynowicz by government agents, and, although they mention Sten frequently, with but one exception the references are totally unrelated to the crime about which Ohrynowicz testified. GX 47, besides repeating the contents of GX 27, for the most part consists of reports of interviews with other potential witnesses and suspects; they do not allude either to Sten or to disposal of the stolen furs. GX 47 also includes inventories of objects seized by government agents at places remote from the dining room of Sten's home where the business card was found.

■ The one sentence of GX 27 that related to Ohrynowicz's testimony is as follows: "On December 31, 1960, Ohrynowicz stated that he had been visited at the Passaic County Jail by Nick Sten, during which visit Sten had given him $50.00 as partial repayment for the money Ohrynowicz had loaned him following the sale of the furs to Margolis." However, this statement merely duplicates Ohrynowicz's testimony on the witness stand at the trial, and, therefore, although the statement should have been turned over to Sten during the trial, the error in failing to do so was harmless error. Rosenberg v. United States, 360 U.S. 367, 370–371, 79 S.Ct. 1231, 3 L.Ed. 2d 1304 (1959); United States v. Kahaner, 317 F.2d 459, 473 (2 Cir.), cert. denied, 375 U.S. 835, 836, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963).

The same is true of those portions of GX 47 which probably should have been turned over to Sten. One item therein is a report of an interview with Sten by Bergholtz following Sten's arrest. A single sentence of the interview related to the seizure of the card: "It was pointed out to Sten that among the papers recovered from his premises at the time he was arrested was a small green card with the name 'Sullivan Cab Company' on one side and written on the back of the card was '1606 G. Wash.'" This statement was duplicated by Bergholtz's testimony at the trial and also by another pre-trial statement of Bergholtz which was turned over to Sten. The other doubtful item in GX 47 recorded the contents of a bag which was seized in Sten's house at the time of his arrest. However, yet another pre-trial statement by Bergholtz which was turned over during the trial clearly revealed that the bag had been taken. Therefore, the inventory would have been of no additional help to Sten in proving that the search pursuant to his arrest violated the Fourth Amendment, and hence, even if error was committed in withholding this information, it was surely harmless.

We express our gratitude to James M. Denny of the New York bar who, as assigned counsel, gave appellant conscientious and able representation.

The judgment below is affirmed.