**UNITED STATES of America,
Appellee,**

**v.**

**Fred D. FINNIGAN, Appellant.**

**No. 74–1465.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1974.

Decided Nov. 20, 1974.

John M. Fincher, North Little Rock, Ark., for appellant.

Gene O'Daniel, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal from a jury conviction on four counts of a mail fraud indictment charges trial court error in (1) denying appellant's motion to require the postal inspector to make available to appellant the original field notes made by the inspectors in preparing the case, (2) refusing to give appellant's requested instruction regarding criminal liability of a corporate officer, and (3) admitting into evidence a corporate account book containing numerous entries not material to the case. We affirm.

Appellant was convicted on Counts I, IX, X and XI[1] of a mail fraud indictment which charged in substance that appellant had devised a scheme and artifice to defraud and to obtain money by false pretenses and caused the mails to be used for the purpose of executing the scheme; as a part of the scheme appellant sent through the mails unsolicited invoices for advertising in a magazine called "Arkansas Labor and Craftsman," and he fraudulently represented that a Christmas edition and a Spring edition of said magazine would be published when he knew such editions would not be published.

During the course of the trial, at a hearing out of the presence of the jury, on a motion to suppress the admissions made by appellant to Postal Inspector Bonney, appellant requested that the inspector be ordered to furnish field notes relating to all interviews with witnesses during the investigation. The United States Attorney advised the court that defendant's counsel had been allowed to read his entire file which included summaries of interviews with various witnesses, including appellant.

The trial court ruled that appellant was not entitled to the original field notes under the Jencks Act, 18 U.S.C. § 3500, but directed that the government must furnish "anything exculpatory." Defendant's counsel then proceeded to cross-examine Inspector Bonney concerning the investigation. At the close of the hearing the court denied the motion to suppress to the extent that it was based on *Miranda*.[2]

Appellant now urges that the trial court erred in denying his motion to require the postal inspector to make available the original field notes made by government agents in preparing the case. He contends that he was thereby denied discovery essential to an effective preparation of his defense.

In this instance field notes of interviews with witnesses were not producible under the Jencks Act because the witnesses had neither signed nor otherwise "adopted or approved" them. Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); United States v. Turner, 442 F.2d 1146 (8th Cir. 1971). Neither did they purport to be a substantially verbatim recital of an oral statement made by the witnesses. Clancy v. United States, 365 U.

---

1. Appellant was acquitted on Counts II, V and VIII. The remaining counts of the 13-count indictment were dismissed by the court on motion of the government prior to submission of the case to the jury. The court imposed a two year imprisonment sentence but suspended all but six months thereof.

2. *This ruling is not here contested.*

S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961). The written report made by the postal inspector, which was a summary of the field notes, was furnished to appellant. The trial court in denying the motion for the field notes stated, "I don't believe I will require them at this juncture to furnish the field notes, if any, that the witness may have made," thus indicating that his ruling was predicated on the state of the record as it then existed. Appellant proceeded to cross-examine Inspector Bonney concerning the investigation and at no time renewed his request to see the original field notes. However, the record discloses that appellant's counsel did examine Inspector Bonney with respect to the field notes of Inspector Higginbotham (who was not a witness) concerning an interview with the witness Doris Williams, who had testified earlier in the trial. It appears that Inspector Bonney read the contents of the notes into the record. We find no error with respect to the court's ruling concerning the government's compliance with the Jencks Act.

The failure of the government to furnish field notes of conversations with the defendant poses a different problem. Appellant urges that in fairness to the defense and in view of the proposed amendments to Rule 16(a), Fed.R.Crim. P., we should reverse the trial court for failure to order these notes produced.

The proposed amendments to Rule 16 have not been adopted. We therefore make no attempt to interpret them with respect to the matter at hand. Cf. United States v. Tompkins, 487 F.2d 146, 150 (8th Cir. 1973); United States v. Allsup, 485 F.2d 287, 290 (8th Cir. 1973). There is support for the view that "statements" as used in Rule 16(a)(1) should be interpreted broadly to include non-verbatim oral statements. See United States v. Fallen, 498 F.2d 172 (8th Cir. 1974). We need not reach that issue here because it is our view that no prejudicial error has been committed.

As previously indicated, prior to trial the prosecutor made available his entire file to appellant's counsel. Counsel concedes in his brief before this court that the prosecutor was most generous in this regard. The prosecutor assured the court that to his knowledge no exculpatory information existed. The trial court in ruling on defendant's general motion to produce all field notes indicated his ruling was not necessarily final. Thereafter defendant cross-examined with respect to Inspector Higginbotham's notes concerning statements by the witness Williams but did not make any further inquiry concerning field notes of conversations the inspectors had with the defendant. This, coupled with the fact that the prosecutor made his entire file, which included written summaries of defendant's statements, available to defendant's counsel prior to trial, leads us to conclude no prejudicial error was committed.

Appellant claims the court erred in refusing to give his requested instruction regarding the criminal liability of a corporate officer.[3] A review of the court's instructions discloses that the trial court properly instructed the jury with respect to the essential elements of the crime:

First, that the defendant, in fact, had knowingly and wilfully devised a scheme or artifice to defraud * * *. And second, that on or

---

3. Defendant's requested charge was as follows:
An officer of a corporation may not be held criminally liable for specific acts of his corporation, performed through its employees, unless he actually and personally performed the act which constitutes the offense or the act was done at his direction or with his permission. Consequently, the defendant, Fred Finnigan, as an officer of the corporation, Arkansas Labor and Craftsman Corporation, may not be found guilty of the offense alleged unless the Government has proved beyond a reasonable doubt that each and every element of the so-called scheme was executed by Fred Finnigan or with his knowledge, and you must find that this knowledge existed prior to any overt act done by Fred Finnigan or at his direction and with his permission.

about the date mentioned in the count he knowingly and wilfully mailed, or knowingly and wilfully caused the corporation referred to in the evidence, or an employee or employees of that corporation, to mail to such addressee the letter referred to in the count under consideration for the purpose of executing such scheme or artifice * * *.

The corporation involved, "A. L. & C. Corporation," was nothing other than the alter ego of appellant. The only employees that the corporation had aside from appellant were the bookkeeper, Mrs. Doris Williams, and an occasional helper. We are satisfied that the instructions when considered as a whole were proper.

Finally, appellant contends the court erred in admitting into evidence the account book kept by Mrs. Williams because it contained numerous entries of receipts from many businesses other than the thirteen named in the indictment and thus could have done nothing less than prejudice the jury by causing them to believe that all the entries and all the income noted in the account book were the result of the alleged scheme. The account book was in the possession of appellant. During the cross-examination of Mrs. Williams, appellant's counsel produced the account book, showed it to Mrs. Williams, and questioned her with respect to the first entry of $3200, which she identified as the proceeds of a loan to appellant which was used to open the account. She had testified without objection on direct examination that the total deposits approximated $6000 and the collections were the only deposits made. Appellant's account book cross-examination obviously had the purpose of impeaching her testimony with respect to the amount of the collections. On redirect the government offered the account book into evidence. Appellant sought to limit inquiry to the $3200 item. His objection was overruled and the exhibit received.

Initially we observe that since appellant had interjected the account book for the purpose of impeaching the witness, it was appropriate to permit redirect examination with respect to it unless the probative value of the testimony and exhibit was outweighed by the prejudice created. Here we find no prejudice. Earlier in the trial the bank records of appellant's corporation had been received in evidence. They included the deposits consisting of checks received from customers other than those named in the indictment. At the time the bank records were received in evidence, the trial court admonished the jury that there was no claim that all the money deposited was procured through fraud and that the jury should not consider a deposit unless there was other evidence connecting the deposit with the scheme charged in the indictment. No challenge is now made to the receipt in evidence of the bank records. We are satisfied the evidence at most was cumulative and not prejudicial.[4] The counts upon which the jury convicted were supported by strong evidence.

Affirmed.

---

4. It is worthy of note that the jury acquitted on three of the seven counts submitted.