**UNITED STATES of America, Appellee,**

v.

**Hal Clemit DERRICK, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Burnett Wendell FINCHUM, Appellant.**

**Nos. 73–2381, 73–2384.**

United States Court of Appeals, Fourth Circuit.

Argued July 22, 1974.

Decided Dec. 3, 1974.

---

John F. Dugger, Morristown, Tenn., for appellant in No. 73–2381.

Ben W. Hooper, II, Newport, Tenn., for appellant in No. 73–2384.

Thomas P. McNamara, U. S. Atty. (Malcolm J. Howard, Asst. U. S. Atty., on brief), for appellees in Nos. 73–2381 and 73–2384.

Before CRAVEN, BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

In January of 1973, a grand jury for the Eastern District of North Carolina returned an indictment charging that during the period from November 20, 1970, to May 2, 1972, Hal Clemit Derrick and Burnett Wendell Finchum, together with five other individuals, were engaged in a conspiracy (18 U.S.C. § 371) to violate the Internal Revenue Laws relating to the manufacture, possession and transportation of non-tax paid whiskey.[1] Derrick and Finchum and all but one of the remaining defendants were found guilty by a jury and a judgment of conviction was entered on October 10, 1973. Derrick and Finchum have appealed.

The primary issue on this appeal involves one Lee Hadad who was the Government's principal witness and who had been named in the indictment as a coconspirator but not as a defendant. Hadad testified that he was in the bottled beverage business in Knoxville, Tennessee, and that Derrick approached him in April of 1971 about the possibility of purchasing large quantities of sugar. The parties reached an agreement and over the next ten months Hadad sold Derrick approximately 576,000 pounds of sugar. Hadad testified that he continued doing business with Derrick until July of 1972, supplying him with sugar

[1]. 26 U.S.C. §§ 5601(a)(1), 5601(a)(4) and 7206(4).

as well as plastic jugs, and detailed the manner in which Derrick picked up these supplies, stating that on a number of occasions he was accompanied by Finchum. Hadad further testified that in an interview with Phillip McGuire, Special Agent for the ATF, on August 25, 1971, he admitted his dealings with Derrick and agreed to cooperate with McGuire and thereafter reported to him concerning each transaction he had with Derrick.

At the conclusion of Hadad's direct examination the Government in compliance with the Jencks Act [2] furnished to counsel for the defendants a copy of a thirteen page statement made by Hadad to McGuire on August 9, 1972. This statement itemized Hadad's transactions with Derrick including information from Hadad's business records covering the period from April, 1971, through July of 1972. In addition to these transactions the statement reflected in detail Hadad's various contacts with Derrick and Finchum as well as his cooperation with Special Agent McGuire and other federal officers. Thereafter, during the course of McGuire's testimony defendants' counsel elicited the information that Hadad had signed another statement which, however, McGuire insisted did not relate to the present case. The defendants moved the court that they be furnished a copy of this statement which motion was resisted by the Government. The statement was presented to the district judge who examined it *in camera* and ruled that it did not fall within the purview of the Jencks Act since it dealt with transactions which occurred prior to those testified to by the witness in the present case. Derrick and Finchum contend that this action of the court was violative of the Act and seriously impeded their cross-examination of Hadad.

Incident to their request for the subject statement the defendants directed the court's attention to an indictment which had been returned in February of 1973 in the Western District of Virginia which charged Finchum and Derrick, together with three other defendants, with a similar conspiracy based upon the same alleged course of conduct and covering a period from March 1, 1972, to June 26, 1972. That case was tried to a jury in the latter part of April, 1973, and all of the defendants were acquitted. In the Virginia case Hadad was also named as an unindicted co-conspirator and appeared as the principal witness for the prosecution. Derrick and Finchum were represented in the Virginia case by the same counsel who defended them in the present case and the Government had delivered to them a five page statement dated August 9, 1972, given by Hadad to Special Agent McGuire. This statement contained to a large degree the same information as the one in the present case with the exception that it reflected only the sugar transactions for the period between March 9, 1972, and June 20, 1972. Hadad testified in the Virginia trial that he had given only one statement to Agent McGuire which, of course, was false. The Government, however, takes the position that the statement delivered in the Virginia trial related only to transactions germane to the conspiracy alleged to have taken place in that district, and that likewise the statement given to defendants in the present case contained information bearing only upon the conspiracy in the Eastern District of North Carolina. Similarly, the Government urges that the third statement which was requested in the present case but denied by the court relates to a possible conspiracy that took place in another district.

 We think, unquestionably, the Government should have delivered to defense counsel all three of Hadad's statements in both the Virginia trial and in the present case. The three statements covered a continuous course of conduct involving Derrick, Finchum and Hadad and the defendants' right to inspect

2. 18 U.S.C. § 3500.

these documents should not be frustrated by the Government's decision that they related to three separate conspiracies. The Act requires production of any statement "which relates to the subject matter as to which the witness testified," and "[i]n determining whether the statements in question 'related to' the direct testimony of the witness, it must relate *generally to the events and activities testified to.*" (Emphasis in original), United States v. O'Brien, 444 F.2d 1082, 1086 (7 Cir. 1971). If the statement relates to the general context of the testimony of the witness, it is not the prerogative of the Government nor even the court to pass upon the relevancy or utility of the statement. In Jencks v. United States, 353 U.S. 657, 668–669, 77 S.Ct. 1007, 1013, 1 L.Ed.2d 1103 (1957), the Court stated:

> "Because only the defense is adequately equipped to determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less. * * * Relevancy and materiality for the purposes of production and inspection, with a view to use on cross-examination, are established when the reports are shown to relate to the testimony of the witness."

While the purpose of the Act was to limit in certain respects the breadth of the Jencks decision "Congress took particular pains to make it clear that the legislation 'reaffirms' that decision's holding that a defendant on trial in a criminal prosecution is entitled to relevant and competent reports and statements in possession of the Government touching the events and activities as to which a government witness has testified at the trial." Brennan, J., concurring, Palermo

v. United States, 360 U.S. 343, 361, 79 S.Ct. 1217, 1229, 3 L.Ed.2d 1287 (1959).

While we thoroughly disapprove of the manner in which the three statements of Hadad were handled, we nevertheless conclude that the harmless error rule saves the Government's case. We have examined the third statement of Hadad and find that the same information disclosed therein was included in much more detail in the two statements which were made available to defendants' counsel during the present trial and the trial in Virginia. Under these circumstances, while it is true "that only the defense is in position to determine the precise uses that may be made of demanded documents, * * * that is not to say that the harmless error rule is never applicable in respect to the nonproduction of demanded documents."[3] Since defense counsel already had all of the information reflected in the third statement, the failure of the Government to produce that statement did not prejudice them in their cross-examination of Hadad. This was the conclusion reached by the Court in Rosenberg v. United States, 360 U.S. 367, 371, 79 S.Ct. 1231, 1234, 3 L.Ed.2d 1304 (1959):

> "Since the same information that would have been afforded had the document been given to defendant was already in the possession of the defense by way of the witness' admissions while testifying, it would deny reason to entertain the belief that defendant could have been prejudiced by not having had opportunity to inspect the latter."

*See also,* United States v. Missler, 414 F.2d 1293 (4 Cir. 1969), cert. denied 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93.

We have carefully considered the other points raised on these appeals and, finding them without merit, the judgments of conviction are affirmed.

Affirmed.

3. Killian v. United States, 366 U.S. 231, 243, 82 S.Ct. 302, 309, 7 L.Ed.2d 256 (1961).