UNITED STATES of America, Plaintiff,

v.

Philip J. GOLDBERG, Defendant.

No. CR–70–517 Phx. WPC.

United States District Court,
D. Arizona.

Aug. 23, 1977.

Joseph R. Keilp, Asst. U. S. Atty., Ronald A. Lebowitz, Phoenix, Ariz., for plaintiff.

Donald C. Smaltz, Los Angeles, Cal., for defendant.

AMENDED MEMORANDUM
AND ORDER

COPPLE, District Judge.

This Court's Order filed herein on August 18, 1977, is amended to read as follows, nunc pro tunc:

The Supreme Court remanded this case to determine whether certain writings should have been produced for use by defense counsel at trial pursuant to 18 U.S.C. § 3500, the Jencks Act. This Court was directed to hold hearings, make findings pursuant to the standards outlined in the opinion and enter either a new final judgment of conviction or vacate the judgment of conviction and accord defendant a new trial. *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603. The Court also said:

"By noting some of the issues that must be dealt with on remand—hopefully we have set forth the most significant— we do not intend to limit the remand proceeding. It may be that further issues, heretofore overlooked or raised by evidence adduced in the remand proceeding, will also be presented for consideration." *Goldberg, supra* n. 20.

The documents involved directly in the remand opinion are:

1. Notes made by Assistant United States Attorney Keilp at interviews with witness Newman.

2. Notes made by Assistant United States Attorney Lebowitz (lead counsel for the prosecution) at interviews with the witness Newman.

3. Notes written by the witness Newman himself.

As to the first and second categories i.e., notes made by the prosecution attorneys, the Court said: "We hold that a writing prepared by a Government lawyer relating to the subject matter of the testimony of a Government witness that has been 'signed or otherwise adopted or approved' by the Government witness is producible under the Jencks Act . . . ." 425 U.S. 94, 98, 96 S.Ct. 1338, 1342. And at page 110, 96 S.Ct. at page 1348: "For example, it will be necessary to determine whether the prosecutors' notes were *actually read back to Newman* and whether he adopted or approved them." (Emphasis added) And in footnote 19, page 110, 96 S.Ct. page 1348, the standard is further clarified:

"Every witness interview will, of course, involve conversation between the lawyer and the witness, and the lawyer will necessarily inquire of the witness to be certain that he has correctly understood what the witness has said. Such discussions of the general substance of what the witness has said do not constitute adoption or approval of the lawyer's notes within § 3500(e)(1), which is satisfied only when the witness has 'signed or otherwise adopted or approved' what the lawyer has written. *This requirement clearly is not met when the lawyer does not read back, or the witness does not read what the lawyer has written.*" (Emphasis added)

In further elaboration, Justice Stevens writing and Justice Stewart joining in a concurring opinion said at page 114, 96 S.Ct. at page 1350: "In short, more than relevance to the testimony and approval by the witness is necessary to make a writing a Jencks Act statement. It must first of all be the kind of factual narrative by the

witness that is usable for impeachment." And at pages 115 and 116, 96 S.Ct. at page 1350, of the concurring opinion:

"General testimony that some of the notes taken by the prosecutor during a lengthy interrogation were read back to the witness, and that the witness sometimes assented to the prosecutor's version of what he said, would not justify a finding of approval of any particular note. Fairness to the witness demands a much stricter test of approval before he may be confronted with assertedly prior inconsistent statements. . . . Any determination that a portion of the prosecutor's notes is producible must be supported by a finding of unambiguous and specific approval by the witness."

Justice Powell, with whom the Chief Justice joined in concurring with the judgment and in agreeing with Justice Stevens that a prosecutor's notes are producible only upon a "finding of unambiguous and specific approval" of specific notes, added at page 125, 96 S.Ct. at page 1355: "In my view, such a finding depends upon the witness' having approved specific notes with the knowledge that he is formalizing a statement upon which he may be cross-examined."

And lastly, from the opinion at this point, the Court held at page 105, 96 S.Ct. at page 1345: ". . . writings must be produced only to the extent that they are 'statements' as defined . . . ."

With the above guidelines and standards in mind, this Court held the remand hearing covering a period of four days and has reviewed all the writings at issue. The following will constitute this Court's findings and conclusions in compliance with the remand order.

### KEILP NOTES

*(Exhibits 1–A through 1–E at the hearing on remand)*

■ The Court has reviewed all these notes and considered the testimony of the witnesses. These are the typical lawyer interview notes and mind joggers including reminders to himself. The evidence is un-

disputed that these notes were never "read back to or adopted" in any manner by the witness Newman. He never read the notes until they were shown to him immediately prior to commencement of the remand hearing long after completion of the trial. They were never read to him. They were not subject to production at the trial under the Jencks Act. His ambiguous answers at trial are not to the contrary.

## LEBOWITZ NOTES

### (Exhibit 3 at remand hearing)

These notes are even less a "written statement made by said witness and signed or otherwise adopted or approved by him." 18 U.S.C. § 3500(e)(1). They are almost illegible mind joggers, cryptic, episodic and nowhere truly narrative in form. They include reminders of lines of cross-examination, questions formulated by the attorney for use for witness examination suggested probably by information elicited from Newman during the interview, references to various exhibits to be referred to or re-examined, abbreviated characterization and summaries of the witness' actual comments. They are not "substantially verbatim." *March v. United States,* 362 A.2d 691 (D.C. C.A.1976). On their face they would not qualify as Jencks Act materials. Further they were never read back to [1] or seen by the witness Newman until he reviewed them for the remand hearing long after completion of the trial. They were not subject to production at the trial under the Jencks Act.

## NEWMAN NOTES

### (Exhibits 2–A through 2–E at the hearing on remand)

With regard to these notes, they were written by Newman himself and consist of statements of fact, suggested cross-exami-

nation questions and lines of cross-examination to be propounded by government counsel to witnesses other than Newman, financial summaries, etc., and constitute in part at least "statements" as defined by 18 U.S.C. § 3500(e)(1).

As to these writings the opinion of the Court, 425 U.S. at page 110, 96 S.Ct. at page 1348 notes:

"The Government, although conceding that these 40 pages contain 'statements', argues that they are nevertheless not producible. The Government contends that Newman wrote the 40 pages after completing his direct testimony in order to aid the prosecution's cross-examination of a defense witness, and these are not producible because not in existence at the time of petitioner's motion to produce,[18] but the Government admits that these assertions are not based on facts in the record. Any inquiry regarding them is not for this Court but for the District Court on remand." . . ..

Footnote 18: "Another matter for the District Court is the parties' dispute whether there was a *proper Jencks request when Newman testified on rebuttal.*" (Emphasis added)

As Justice Powell noted at page 123, 96 S.Ct. at page 1354, the Act ". . . requires production of 'statements' only upon the defendant's motion. See 18 U.S.C. § 3500(b)."

In his cross-examination of Newman during the government's case in chief at trial, defendant's counsel questioned Newman about the interview notes of Keilp and Lebowitz only and requested only their production. He never questioned Newman about notes or statements written by him and never at any time requested production of any such. No request for production of Jencks Act statements was made after Newman's direct testimony on rebuttal.

1. The procedure followed, as testified to by Newman at trial and on remand, was exactly that described in footnote 19, page 110, 96 S.Ct. 1338, of the Supreme Court opinion quoted at page 1173 above and in Justice Stevens' concurring opinion at pages 115 and 116, 96 S.Ct. 1338, quoted at page 1173 above. Certainly

Newman was not approving specific notes with the knowledge that he was formalizing a statement upon which he might be cross-examined. See Justice Powell's concurring opinion at page 125, 96 S.Ct. 1338 of the opinion, quoted above at page 1173.

Exhibit 2–A consists of notes made by Newman as reminders to himself in preparation for his direct testimony in the government's case in chief. These notes were never shown to government counsel although left at the end of the trial with all other papers. Newman was never questioned by defense counsel as to the existence of these notes and no request for production was made. These were never in the "possession" of the government until after the trial was over and there is no evidence the government was even aware of their existence during the trial.

Exhibits 2–B through 2–E were prepared by Newman on his own initiative *after* his testimony in the government's case in chief, *during* the defendant's case in chief and *before* he was called by the government as a rebuttal witness.

Newman contends that while waiting each day in the U.S. Attorney's office he would occupy his time by making the notes and leave them on a table. He never specifically showed them to or discussed them with the government attorneys. The government attorneys testified that they never saw or used most of the notes but simply gathered them up with the total mass of paper in the "war-room" and filed them away at the end of the trial.

While the Court finds this difficult to believe, under the circumstances of this seven-week "paper infested" trial it is not impossible. However, this need not be resolved because defense counsel never requested the production of Newman's own notes and never, at any time, questioned him about notes or writings he might have made that would be even arguably Jencks Act material. Without such a request, there was no duty to produce. 18 U.S.C. § 3500(b).

Apparently recognizing this problem, defendant claims in his "Memorandum Re: Remand Proceedings" at page 3: "This Court need not determine when any of the notes involved [Newman's] in these proceedings were prepared. There was a continuing order for production of all Jencks Act and Brady (v. Maryland) material issued on May 15, 1973. (RT "A" 99.)"

That order was made in the context of one of many pre-trial hearings herein when defense counsel was concerned that he had not received copies of all the government's proposed exhibits. The government in this case maintained a completely "open file policy" and furnished defense counsel with all the government's evidence, interview statements, witness statements, etc., as and when received by the government. See RT "A" 98–113.

The order relied upon by defendant was made at a pre-trial hearing held May 15, 1973. The trial commenced May 22, 1973. The order requested and not objected to or commented on by defense counsel reads as follows, RT "A" 99:

THE COURT: ". . . and I have been assured by the U.S. Attorney that that was the basis on which they were going [open file policy] and I have no reason to disbelieve it. But anyway, for purposes of your record, the government is ordered to produce every document which it has in its possession or as it gains possession thereof, to produce copies of them for you, for the defendant. That is every document that is to be used in presentation of the government's case, all *Jencks Act statements of witnesses who will be called or may be called, will be delivered to the defendant by tomorrow.*" (Emphasis added)

And later, on the same page:

THE COURT: "And further, any documents in the government's possession or which it may acquire later, whether to be used at trial or not, which may possibly fall under the *Brady* Rule, will also be given to Mr. Smaltz." (Emphasis added)

As to the Jencks Act question the order was on its face limited to Jencks Act material in the possession of the government on May 15 or May 16. The trial did not start until May 22. The order by its wording was limited to "tomorrow". It was by no means a "continuing order". If defense counsel thought so it wouldn't have been necessary for him to question Newman after he testified on direct examination re-

garding the attorney interview notes at issue here to attempt to qualify them as Jencks Act statements and then request their production.

■ Defendant also insists the notes should have been delivered as Brady material because they demonstrated the breadth of Newman's cooperation with the government. In the first place, since *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), it is doubtful if such a Brady order is valid as requested and as worded by the Court. In addition, prior to trial defense counsel was given a 55-page transcript of Newman's testimony before an Eastern District of Michigan Grand Jury investigating activities of Skillman and Goldberg, defendants herein; copy of a 19-page interview of Newman by postal inspectors; and a 91-page transcript of Newman's interview with government attorneys as part of his plea bargain agreement to cooperate in the prosecution of Goldberg as a government witness. Later, and before cross-examination of Newman, defense counsel was furnished a copy of the written plea bargain agreement. These were extensively used by defense counsel in his cross-examinations of Newman. In addition both counsel argued extensively the subject of Newman's cooperation and plea bargain. This was the main thrust of defense counsel's argument to discredit Newman as a prosecution witness. The fact and extent of Newman's cooperation could not have been made more painfully clear to the jury. The omission did not deprive defendant of a fair trial and its production as Brady material would not have helped him. *Agurs, supra* at 108 and 110, 96 S.Ct. 2392. Certainly the Newman writings did not tend to prove Goldberg innocent.[2]

## GOVERNMENT MISCONDUCT

Lastly, defendant contends that because of cumulative misconduct by the government the case should be reversed or dismissed. *United States v. Banks*, 383 F.Supp. 389 (D.S.C.1974). While many of these individual items of "misconduct" were raised on direct appeal to the Ninth Circuit, all so raised were decided adversely to defendant in that court's unpublished memorandum affirming conviction.[3] None were considered by the Supreme Court in its limited grant of certiorari. However, in view of *Goldberg, supra* n.20, they will be considered here as the issue is re-cast by defendant.

■ The individual items complained of are considered individually as follows:

1. *Nondisclosure of telephone interception.*

In an entirely unrelated matter involving an FBI tap on defendant's then employer's telephone certain conversations of defendant and his attorney were intercepted. The matter came to light prior to trial through a newspaper article read by defense counsel. It was thoroughly

---

**2.** Counsel point out a small number of items in approximately 40 pages of the notes that were relevant to Newman's testimony in rebuttal. No clear showing is made as to how they could have been used to impeach Newman on any material matter. In the view of the Court, even if produced, the verdict would have been the same. The Supreme Court, in its remand order, directed that if this court found any of the notes in question should have been produced it should then consider whether the error was harmless. See *Goldberg, supra* n.21, 96 S.Ct. 1338. The standard to be applied as noted there was set forth in *Campbell v. United States*, 373 U.S. 487, 497 n.14, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); *Rosenberg v. United States*, 360 U.S. 367, 371 (1959). Applying that standard, if error, it was harmless beyond any doubt.

Since the *Goldberg* decision, *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), was decided. That case indicated that a greater burden may now be placed on a defendant claiming reversible error by nondisclosure not only of Brady material but possibly impeaching evidence as well. See *Garrison v. Maggio*, 540 F.2d 1271 (5th Cir. 1976), *cert. den.* —— U.S. ——, 97 S.Ct. 2655, 53 L.Ed.2d 258: "We believe, however, that we are free after *Agurs* to hold that an even stricter standard of materiality, one requiring petitioner to demonstrate that the new evidence probably would have resulted in an acquittal, is appropriate before a new trial must be granted for the nondisclosure of purely impeaching evidence."

**3.** *United States v. Goldberg*, No. 74–1023, December 18, 1974.

explored in pretrial hearings and the matter was disposed of. No evidence was secured thereby relative to this case and none was used. See RT "A" 143 et seq.

The Ninth Circuit memorandum indicates by silence that the matter was not raised on appeal.

2. *Skillman motel vs. jail accommodations.*

Skillman, a witness in custody on a prior conviction, was kept at a motel instead of in jail where prisoners are usually kept. Defendant claims that the statement of government counsel to the jury that there was no local jail close by where he could be kept (there was) misled the jury and that Skillman insisted on staying at a motel instead of in jail each night as a condition for his testimony. This was raised on direct appeal and decided adversely to the defendant.

3. *Nondisclosure of recommendation for parole for Skillman.*

This matter was explored on cross-examination and the jury made aware that Skillman knew of such a recommendation at the time of his testimony. See page 16 of defendant's Memorandum Re: Remand. The after-trial discovery of the letter itself would add no more. If error, it was harmless beyond a reasonable doubt. *Rosenberg v. United States,* 360 U.S. 367, 370 and 371, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959).

4. *Changed Newman plea.*

*After* the case had been submitted to the jury, the government decided to recommend that Newman be permitted to plead to a misdemeanor instead of one felony count as originally agreed. Newman had no knowledge of any such change until after the verdict was rendered. This matter was also disposed of adversely to defendant on direct appeal.

5. *Failure to produce Newman notes.*

All the notes involved are discussed above.

6. *Disclosure of information ordered sealed by the Court.*

After this case was remanded by the Supreme Court and before the hearing one of the prosecuting attorneys in this case, but after his resignation to enter other practice, in a newspaper interview gave information relative to the defendant which had been ordered sealed by the Court. This was a clear and inexcusable violation of his duty as an officer of the Court. However, it obviously did not affect the outcome of the original trial.

The rule of the *Banks* case is simply not applicable here. None of the items of alleged misconduct, singly or collectively, deprived defendant of a fair trial. If errors they were harmless. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966).

One comment may be in order at this point as to the Court's overall evaluation of the witness Newman at the remand hearing. Mr. Newman was a sincere and completely honest witness. He is intelligent and possessed of a remarkably accurate and complete memory for details. He had no motive to color or falsify his testimony at the remand hearing. The Court accepted his testimony completely.

The Court also should note that counsel who was, prior to trial, appointed to represent the defendant pursuant to the Criminal Justice Act has, throughout these proceedings and on remand, represented the defendant with thoroughgoing excellence and at considerable financial sacrifice to himself and his law firm.

Returning to the remand order, the Court concludes that the original denial of defendant's Jencks Act motion to produce was correct for the reasons given herein, even though the reasons upon which the original denial was based were found by the Supreme Court to be erroneous. In this regard it is also noted that the three judges of the Ninth Circuit on the direct appeal panel (even though the Supreme Court held that such a finding should be made in the first instance by the District Court and not the Circuit Court) also held unanimously, "Apart from the question whether such notes [Keilp and Lebowitz notes] were exempt from the Jencks Act (18 U.S.C. 3500) as 'work product', they were not statements

of the defendant within the meaning of § 3500(e). We find no clear, prejudicial error."

IT IS ORDERED:

The Clerk will prepare a new final judgment of conviction for signature by the Court. The judgment will be identical to the original except it will be entered as of the date of filing hereof.

IT IS FURTHER ORDERED:

1. Defendant may remain on the same bail and release conditions as at present pending appeal from this Order.

2. As a special and continuing condition of release defendant will contact his counsel by telephone or in person at least once each week and cooperate in expediting appeal.

3. Within thirty days of the date hereof defendant, through his counsel, will furnish the Court a complete, sworn financial statement showing all assets and liabilities and all income and expenses.